# Hood and Graham *vs* Winsatt.

ERROR TO THE WASHINGTON CIRCUIT.

*Execution lien.   Pleading.*

*April* 26.   CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

The case, pleadings, and judgment of the Circuit Court.

IN an action of *replevin*, brought by *Hood* and *Graham* against *Winsatt*, for a horse, the latter pleaded that whilst a *fieri facias* against one *Bunch* was alive and in the hands of a constable of *Washington* County, the said horse was the property of the said *Bunch*, and was in said county; that before the return or return day of that execution, *Bunch* fraudulently removed the horse to *Marion* County; that afterwards, and before the return day of the execution, it was returned to the *justice* who had issued it, and another *fi. fa.* was, *on the same day*, issued and *delivered* to a constable of *Marion*, who delivered it to *Winsatt*, also a constable of that county; and that, before the return day, he levied on the horse, which he sold, as he had a right to do, in satisfaction of the execution.

After a demurrer to that *cognizance* had been overruled, *Hood* and *Graham* replied that the horse was not the property of *Bunch* whilst the first *fi. fa.* was in the hands of the constable of *Washington*, and that they themselves owned the horse when the last execution was *levied* in *Marion*.

The Circuit Court having sustained a demurrer to that replication, judgment of *retorno* was rendered in favor of *Winsatt*, to reverse which, this *writ of error* is prosecuted.

Replication to a cognizance, denying any material fact therein, is good on general demurrer.

The averment (in the replication) that the horse belonged to *Hood and Graham*, at the time of the *levy*, was certainly immaterial, because, nevertheless, it might not have been their property when the execution was delivered to the constable of *Marion*.   But the replication was good so far as it traversed the averment of property in *Bunch* whilst the first *fi. fa.* was in the hands of the con-

stable of *Washington;* for unless that averment be true, the *cognizance* could not be sustained. The replication was therefore substantially good, and the Circuit Judge consequently erred in sustaining the demurrer to it.

But, in remanding the case, we must decide on the sufficiency of the *cognizance* involved, as it is, necessarily, in the question raised by the demurrer to the replication to it.

As *Winsatt* has not averred that the horse continued to be the property of *Bunch,* until the *fi. fa.* to *Marion* had been delivered to the constable of that county, the question we are now considering must be determined on the hypothesis that *Bunch* had transferred his right to *Hood* and *Graham,* as *bona fide* purchasers, before that time; for, in testing the sufficiency of *Winsatt's* averments, every deduction, not necessarily inconsistent with their truth, should be assumed by the Court.

Then the sole question remaining for consideration is, whether the legal lien, which had attached to the horse in *Washington,* was continued in *Marion,* by the delivery of the renewed *fi. fa.* to the constable of the latter county on the day of the return of the first.

This question has never, so far as we know, been hitherto expressly decided in any reported case.

Perceiving no reason, in this record, for departing from the rule of law, which generally disregards fractions of days and considers a thing done the first moment, as having, for all legal purposes, been done at the last instant of the same entire day, we will treat the delivery of the *fi. fa.* to the constable of *Marion* as having been made simultaneously with the return of the first *fi. fa.* in *Washington,* so that, if the lien could have been prolonged in such a case beyond the return of the first execution, there was, according to the facts pleaded, an unbroken continuity of lien in this case.

It has been well settled, that the lien imparted to a *fi. fa.* from the date of its delivery to the officer for execution, was intended only to prevent the debtor from eluding the process, by alienating any portion of his estate, liable to levy, and that, though a sale by him of property incumbered by such lien, may pass the title to a stranger,

The lien imparted to an execution is intended to prevent the defendant from eluding its force by alienation of the property liable: *quere,* how long does this lien continue.

HOOD & GRAHAM
vs
WINSATT.

The execution in the hands of the officer gives the lien, not the judgment—and it continues during the life of the execution.—
If, after the return day of an execution, (not levied,) one entire day elapse before another is placed in the hands of an officer where the property may be, the lien ceases.

'If a second writ of *fi. fa.* issue on the day of return of the first, (which was in the hands of an officer, for levy,) and be also placed in the hands of an officer for levy, the lien created by 'the first *fi. fa.* is continued, altho' 'the second is issued to a different county.

yet, even if that stranger be a *bona fide* purchaser, he takes the title, subject to the legal right of the creditor to levy his execution and sell, just as he might have done had there been no such alienation. But adjudged cases, within our knowledge, have not conclusively determined how long such a purchaser is subject to such a lien.

There can be no doubt that, as it is the execution in the officer's hands for levy, and not the judgment, which operates as a lien, *that lien* must cease whenever the right of levy ceases, or is suspended voluntarily by the creditor, and therefore, we are of the opinion, that if after the return or return day of a *fi. fa.* one entire day shall have elapsed before the delivery of another *fi. fa.* to an officer to execute, a *bona fide* purchaser of property, subject to lien under the first process, *might* be exonerated from the lien; for had he purchased during the interval, when there was no lien, his purchase might not have been subject to the subsequent lien attached to the last execution, and the fact that his title was previously acquired should not make his condition worse, the voluntary suspension of the lien, even for one whole day, consummating his right as absolutely as it could have been made had it not been initiated before that day.

But although the lien may not, *in virtue of the first execution*, extend, *proprie vigore*, beyond the life or return of that process, yet, nevertheless, may it not be prolonged by the delivery of another *fi. fa.* before the return or expiration of the first? It seems to us that reason, policy, and justice conduce to an affirmative answer to this question, and that this tendency is fortified by judicial intimations and the practiclal understanding in the country.

An uninterrupted continuity of *execution process* is, in a substantial and practical sense, but one entire executive remedy upon the judgment. The lien given by law, considered in a benefiicial sense, is but the right in the creditor to levy his execution as long as his executive remedy shall have been continued, whether by one process only, or by a continuous succession of writs of execution; a different doctrine would encourage fraud, facilitate evasion, and thus tend to injustice to the most *vigi-*

*lant* creditors, and to a frustration of the policy of the statutory lien.

The possibility and availableness of such a continuity of *lien*, as well as continuity of *execution,* was strongly intimated by this Court in the case of *Daniel* vs *Cockran's adm'r.* (4 *Bibb,* 533,) and in that also of *Harrison* vs *Wilson,* (2 *A. K. Marshall,* 552.)

Therefore, we are of the opinion that if the horse, in this case, had remained in *Washington* county, and the second *fi. fa.* had been delivered to an officer of that county, when the last was delivered to the constable of *Marion,* the creditor's lien would have been continued, and the horse would have been subject to levy and sale under the continued execution.

Does the fact of removal to *Marion* affect the principle of this conclusion? We think not.

In the case of *Clagget* vs *Foree,* (1 *Dana,* 428,) this Court decided that an execution lien is not necessarily lost by a temporary removal of the property, but is so far ubiquitous as to authorize a levy on and sale of it, if it should be restored to the county from which had it been removed, so as to be taken in execution whilst the lien continues. Any other doctrine would, as seems to us, be inconsistent with the nature and end of such a lien, and would tend directly to destroy its value, by making it depend on the will of the debtor, which it was intended to control. And it appears to us that the principle of the decision just cited applies effectually to this case, for whilst the lien which had attached in *Washington,* was in full force, the *fi. fa.* to *Marion,* whither the horse had been taken, was delivered to a constable in that county, and thereby continued the lien until the levy and sale of the horse, so that there was no lapse or suspension of the lien from its initiation in *Washington* to its consummation in *Marion.*

An execution in the hands of an officer gives a lien on the property of the def't in the county, which is not lost by the temporary removal.

The cognizance, as pleaded, is therefore, in our opinion, good, and sufficient to bar the the action, as it allows no pretext for presuming either fraud, intentional delay, or culpable lack of diligence in the execution creditor, whereby his lien might have been lost in favor of a *bona fide* purchaser.

But, for the error in sustaining the demurrer to the replication, the judgment of the Circuit Court must be reversed and the cause remanded, with instructions to overrule the said demurrer.

*Harlan* for plaintiffs: *Shuck* for defendant.