## In re LIBERTY LUMBER CO., Inc.

District Court, S. D. New York.

Dec. 8, 1933.

398

Louis H. Shereff, of New York City, for the motion.

John D. Lyons, of Monticello, N. Y., opposed.

CAFFEY, District Judge.

The judgment having been docketed in Sullivan county on November 25, 1932, pursuant to section 510 of the Civil Practice Act, it became then and continues a lien upon the real property of the bankrupt in that county. That lien having come into existence more than four months prior to the filing of the bankruptcy petition, it remains good. If the judgment creditor by his motion seeks to vacate the injunction order of June 8, 1933, in so far as it prevents the levy on real estate, I think that in this respect he is entitled to prevail. It is not clear from the papers whether the judgment creditor seeks relief with respect to real property and as I read the papers, it is implied that he does not. I understand that there has not been a levy on real property. Nevertheless, if there has been, or the judgment creditor wishes, a levy on real estate of the bankrupt, he may have an appropriate modification accordingly of the injunction order. The parties have not argued this matter and may be heard on it by briefs (to be exchanged) if they desire.

The remainder of the discussion will be confined to personal property.

By force of section 679, the delivery of the execution to the sheriff of Sullivan county on November 26, 1932, effected a lien on personal property. If that were continuous, and were kept alive down to the filing of the bankruptcy petition, then plainly, because the lien had its inception more than four months preceding the filing of the petition, the injunction should be vacated. The sole question is whether or not the lien lapsed.

It was open to the creditor to issue an alias execution or pluries executions. The forms of the two executions put before me, one dated November 25, 1932 (Exhibit B to Shereff affidavit), and the other dated February 27, 1933 (Exhibit A to Flynn affidavit), seem to me to be sufficient to constitute an original execution and an alias execution. I do not think the issue turns, therefore, upon matter of form.

It is incontrovertibly established that the original or November 25, 1932, execution remained in the hands of the sheriff until February 25, 1933. On that day it was mailed by the sheriff in Sullivan county, addressed to the clerk of New York county, where it was returnable. As February 25th was a Saturday, the document did not reach the New York county clerk until Monday, February 27, 1933 (cf., Smith v. Geraty, 58 Misc. 556, 109 N. Y. S. 738). On that day a new execution was issued. This new execution reached the hands of the Sullivan county sheriff the next day (February 28th). On these facts, was there a lapse?

For the purpose of determining the question as to whether there was a lapse, it will be assumed (without being decided) that there was a lien, effected by the proceedings under the first execution, which remained in existence until it was returned to the clerk of New York county on February 27th. Nevertheless, in so far as I can discover from the authorities, the intervention of a single day before the new execution was received by the sheriff of Sullivan county was a fatal interruption to the continuity of the lien. Daniel v. Cochran's Administrator, 7 Ky. (4 Bibb) 532; Hood v. Winsatt, 40 Ky. (1 B. Mon.) 208. If so, then, inasmuch as the fresh lien resulting from the delivery of the February 27th execution to the officer arose within four months of the institution of the bankruptcy proceeding, it is no longer good as a priority.

The record does not clearly show that the lien was kept good until the first execution during the period between November 26th and February 27th. By the terms of section 640 of the Civil Practice Act, as well as by the terms of the writ itself, it was required that it be returned within sixty days after it was received by the sheriff. More than ninety days had elapsed after he received it before he returned it. There was a levy under it on December 15, 1932, and the creditor argues that, by reason of this fact, the lien was extended beyond the return date; but I think there is a grave doubt on that point.

In the next place, on December 17, 1932, the creditor himself instructed the sheriff to "remove the levy," although the language employed is somewhat conditional or equivocal. On January 27th, the attorney for the creditor instructed the sheriff "to proceed with the levy of the property." The return was nulla bona. It has been held that a lien is lost by return of nulla bona and is not revived by the delivery of an alias execution. Maul v. Scott, 2 Cranch, C. C. 367, 16 Fed. Cas. page 1164, No. 9,306.

In these circumstances it is not clearly shown that the levy was kept intact. On the contrary, the inference is very persuasive that the December 15th levy was released. I should not, however, be willing to dispose of the case on this phase without affording further opportunity for clarification of the facts.

As the lapse between the executions destroyed the lien, the motion must be denied.

Settle order on three days' notice.