## United States Cast Iron Pipe & Foundry Company, et al. v. Henry Vogt Machine Company and S. K. Luton.

(Decided Decembre 13, 1918.)

### Appeal from Webster Circuit Court.

1. Mortgages—Lien Upon After Acquired Property.—Where property described in a mortgage, which the mortgagor did not then have, but, which is to be acquired by him thereafter, a lien is created upon the afterward acquired property, as between the parties to the mortgage, but, it does not create a lien upon the afterward acquired property, as to other parties, except, in the instances of the increase of a female animal covered by a mortgage, and the property of a corporation, acquired by it, in the exercise of powers, which are conferred upon it by its charter.

2. Mortgages—Lien Upon After Acquired Property.—A mortgage executed by a public service corporation, which is sufficiently descriptive of the afterward acquired property, creates a lien upon such afterward acquired property, in favor of the mortgagee, which is superior to the rights of any claimant of a subsequent lien, or purchaser, where the property composes an integral, indispensable or necessary part of the equipment, machinery or fixtures of the corporation, in the performance of the things, which it is authorized to do, by its articles of incorporation; otherwise, the general rule prevails, which is, that the lien of the mortgagee, where a lien upon after acquired property is provided for, attaches to the afterward acquired property, in the condition, in which it is, when it comes under the lien of the mortgagee, as to prior liens, and the general mortgage does not displace such liens, although they may be subsequent to the general mortgage.

3. Mortgages—Lien as Against Subsequent Purchaser.—Before a mortgage will create a lien upon property, as against a subsequent purchaser or lienholder, it must contain such a description of the property intended to be mortgaged, as will give notice to one, who deals with the mortgagor, of the condition of the property dealt with.

4. Mortgages—Lien Upon After Acquired Property.—A mortgage will not create a lien upon after acquired property, unless it is mentioned in the mortgage, or referred to, in terms clearly showing an intention to bind it.

5. Mortgages—Chattels Attached to Freehold — Liens.—Chattels placed upon real estate by mortgagor, after the execution of the mortgage and which are not mentioned in the mortgage, do not pass under the lien of the mortgage, unless they are so attached, that they can not be removed, without injury to the freehold, and thereby cause a diminution of the mortgage security.

6. Contracts—Liens.—A contract for the sale of machinery, which contains a condition, that the title to the machinery, shall remain in the vendor until it is fully paid for, creates a lien upon it to secure the payment of the vendor's debt, where the contract shows, that the retention of the title was intended, only, as a security.

7. Liens—Subrogation.—Where, at the request of the debtor and upon agreement that he is to have the benefit of the lien of the creditor, one pays a debt for another, the payor is entitled to be subrogated to the lien of the creditor.

8. Mechanics' Liens—Materials.—An ice manufacturing plant is a "public improvement," within the meaning of section 2492, Ky. Stat., and a material man's lien to be effective upon such property, must be filed, within sixty days after the last day of the month, within which materials are furnished under the contract for same.

9. Corporations—Stockholder's Liability for Unpaid Subscription.—The liability of a stockholder to creditors for unpaid subscriptions for stock of a corporation, is controlled by the laws of the state, where the corporation is created and exists, and the right of a corporation to pledge its bonds as security for its debts, is governed by the same laws.

10. Evidence—Laws of Other States—Judicial Notice.—The courts of this state will not take judicial notice of the laws of another state, and where a right is claimed, under the laws of another state, and the laws of the sister state are neither plead nor proved, it will be presumed, that the common law, is in force upon the subject in that state, and that the common law of that state is the same as in this.

11. Corporations—Liability of Stockholders—Creditors.—Under the common law, a creditor could not hold a stockholder, liable on stock, which had been issued for property, although the value of the property, as agreed upon, was greatly in excess of its real value, and such a transaction could be assailed, only, upon the ground of fraud, and in such case, the contract must stand, in toto, or be totally rescinded.

12. Corporations—Pledges.—At the common law, a corporation, which was authorized to issue bonds, might pledge them to secure its indebtedness, in a sum, in excess of the debt, and the excess, was not void, if the transaction was in good faith, and not a trick or

device to increase its indebtedness by imposing obligations, which it should not assume.

GORDON, GORDON & COX, J. F. GORDON, and GORDON & GORDON & MOORE, for U. S. Cast Iron Pipe & Foundry Co.

HUNT & BENNETT, HELM & HELM, and HUGH B. FLEECE for Louisville Trust Company.

BAKER & BAKER, CANNADAY & WITHERS, and LAFFOON & WADDILL for Vogt Machine Company and S. K. LUTON.

W. H. YOST and HAZELRIGG & HAZELRIGG for J. D. Wynns and W. J. Nisbitt.

GARRETT S. WITHERS for National Ammonia Co., etc.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The Providence Water & Utilities Company, was a corporation, organized under the laws of the state of Delaware, and we can only surmise, as to what powers, it had under the articles of incorporation, from what it thereafter, attempted to do, as the articles of incorporation are not included in the record. It became the owner of a franchise, as is presumed, that gave it the right to operate a water works system and an ice plant factory, in the town of Providence, Kentucky, but, there is no copy of the franchise in the record, nor pleading, nor evidence to show what the franchise authorized it to do. Commencing in the autumn of the year, 1914, it undertook to build and to operate a water works system, in the town of Providence, and, also, an ice plant, but, in the autumn of the next year, it seems to have become insolvent, and unable to pay its obligations, and this action was instituted by the Henry Vogt Machine Company, to recover a debt, which the corporation owed it, for the machinery which went to make up the ice plant, and, thereupon, the various creditors and bondholders of the corporation, became parties to the suit, including the trustee for the bondholders, and the final result, was a sale of all of the property of the corporation and a distribution of the proceeds, adjudged, between the bondholders and creditors, according to their liens and priorities. From this judgment, the Louisville Trust Company, as a trustee, under a deed of trust, or mortgage, for the benefit of the bondholders, and the United States Cast Iron Pipe & Foundry Company, a creditor, has appealed, as

against the judgments rendered in the action, in favor of the Henry Vogt Machine Company and S. K. Luton. The corporation, itself, is not made a party to the appeal, and no cross-appeal is filed, by either, the Henry Vogt Machine Company, S. K. Luton, or any of the parties to the suit, as it existed in the trial court. In an action of this kind, we are, by necessity, confined to the statement, as provided by section 739, Civil Code, to determine who it is, that is seeking relief by the appeal and against what parties the relief is sought, and the judgments in favor of and against which parties are to be considered.

The stockholders of the Providence Water & Utilities Company, on the ninth day of September, 1914, determined to issue the negotiable bonds, of the corporation to the amount of $75,000.00, and to execute a mortgage to the Louisville Trust Company, as a trustee, for the holders of the bonds, to secure the payment of the bonds, and the interest, which might accrue upon them. The mortgage was executed upon the 10th day of September, 1914, and was recorded, in the office of the clerk of the county court of Webster county, wherein the town of Providence is situated, on the 25th day of November, 1914. The resolution of the stockholders, which directed the directors to issue the bonds and to execute the mortgage, described themselves, as the stockholders of the "Water Company," and directs the mortgage to be placed on the "plant, franchise and equipment, and all the property of every kind, real, personal, mixed, which this company may, now, own or have, or which it may hereafter acquire, situated in the county of Webster and state of Kentucky." The resolution of the stockholders, further, authorized the "directors of said water company" to "use and dispose of the bonds as in their judgment may be necessary for the purpose of financing the installation of a water works system, or other work of public improvement, or for manufacturing purposes, in the city of Providence, Kentucky, or for such other uses, for corporation purposes, as in the judgment of the board of directors may be advantageous." The form of bonds to be issued, and copied into the mortgage, contains the following clause: "These bonds are issued under, and equally secured by a first mortgage, deed of trust, on the water works, reservoir, pumping station, filtering plant, pipe lines, real estate, income, franchise,

rights and privileges now held by the Providence Water & Utilities Company, or hereafter to be acquired by it, etc.''

The property, embraced and intended to be covered by the mortgage, is described, in it as follows:

''The entire water works plant of the said first party, located or to be located, built or to be built, acquired or to be acquired in the county of Webster and state of Kentucky, including the pipe lines or water mains from the source of supply on Trade Water river, to the city of Providence, Kentucky, together with all the rights of way, easements or interest in any land or lands through or over which it may pass, for the purpose of rights of way, together with all pipe lines, water mains or appliances used by it in furnishing water in the city of Providence, or in connection with its plant, whether the said property be located within or without the corporate limits of the city of Providence, Kentucky, and especially including any and all real estate of which it may be now possessed or which may, hereafter, acquire for the purpose of pumping stations, filtration plants, with all buildings which it may now have erected thereon, together with franchise or income derived from the property and operation of the business, as herein stated and set forth, especially including all property, both real, personal or mixed, now belonging to said company, or that may, hereafter, be acquired by it during the life of this instrument.''

By another clause of the mortgage, the corporation undertook to execute additional deeds of mortgage to the trustee, or deeds, writings or other instruments, ''for the better assuring unto the trustee, upon the trust and for the purpose herein expressed or intended, all and singular the premises herein conveyed in trust, or appearing, purporting or intending so to do, or which may, hereafter, be acquired or possessed or created or belonging to said water company, whether the same be now owned or possessed or vested in the water company or be, hereafter, acquired by or vested in it as by the trustee, or its council, may be reasonably requested or required.''

While in the part of the mortgage describing the parties, at the beginning, the corporation executing the mortgage is described as the Providence Water & Util-

ities Company, and, also, just above the signature, but, elsewhere, and in numerous places in the instrument it describes itself as the "Water Company."

On the 27th day of February, 1915, the appellee, Henry Vogt Machine Company, contracted to sell to, and install for the Providence Water & Utilities Company a fifteen-ton exhaust ice machine, with certain fixtures, for the sum of $9,231.00, and on March 16, 1915, it contracted to sell to, and to install for the company, a horizontal return tubular boiler, for the sum of $1,298.00. Certain percentages of the price to be paid for the ice machine and equipment, were to be paid upon approval of the contract and upon shipment of the machinery and the remainder at a future date. The contracts were written and provided, that the title to the machinery should remain in and be held by the selling company, until the entire purchase price should be paid. The Henry Vogt Machine Company, began the delivery and installation, on the 3rd day of April, 1915. The title to the lot of ground, upon which the machinery was installed, was held, at that time, by the appellee, S. K. Luton, who had, a short time, theretofore, contracted to sell it to the Providence Water & Utilities Company, for the sum of $1,500.00, but had never executed nor delivered any writing in evidence of the contract. Luton had, also, agreed to lend to the corporation as much as $5,000.00, to be used in paying its obligations. There appears, in the record, a contract in writing, which was subscribed by Luton and, also, by the corporation, by Luton, as its vice president, and of date April 10, 1915, by which it was provided, that for the purpose of completing the contract, for the purchase of the ice plant machinery, whatever sum Luton should pay to the Henry Vogt Machine Company, in satisfaction of its debt against the corporation for the price of the machinery of the ice plant, which had been purchased from the Vogt Machine Company, that Luton should succeed to, and have as security, whatever security, the Machine Company held for the payment of its debt. The board of directors of the corporation, enacted and entered upon its records, a resolution, which, substantially, provided for the same arrangement. Under this arrangement, Luton paid upon the debt for the machinery, on April 12, 1915, the sum of $1,052.90; on May 5, 1915, the fur-

ther sum of $1,100.00; and, thereafter, an amount suffi-
cient to make his payments amount to $2,202.90. The
Henry Vogt Machine Company completed its contracts,
for the sale and installation of the machinery, on the
10th day of June, 1915, and, thereafter, it made out and
filed a statement in the office of the county clerk, by
which it undertook to assert a lien under chapter 79,
Ky. Stats., upon the lot of ground upon which the ma-
chinery was installed, and the other property of the
Providence Water & Utilities Company to secure the un-
paid portion of its debt.

On the 14th day of May, 1915, the Providence Water
& Utilities Company executed another mortgage to the
Louisville Trust Company, as trustee, in which it was
recited, that it had executed a prior mortgage to the
same trustee on the twenty-fifth day of November, 1914,
(but this was the date of its being recorded), and
"whereas its 'water works system' was now completed,"
it confirmed and ratified the conditions of the prior mort-
gage upon all its property, except such as was other-
wise reserved or conveyed by other instruments, which
were of record. It then described, the property, which
the mortgage was intended to create a lien upon, as fol-
lows:

"The property above mentioned and *convey* in this
instrument is more particularly described as its fran-
chise from the city of Providence, Kentucky, for the pur-
pose of installing a water works system, its land and
pumping station at Belleville, on the Trade Water river,
its right of way, pumping station near the Illinois Cen-
tral depot, in the city of Providence, Ky., its pipe lines
and water mains, its water tower and site on Cemetery
Hill, in the city of Providence, Ky., together with all the
machinery, appliances and appurtenances thereunto be-
longing or in any wise appertaining."

It appears from the evidence, that the price of the
lot of ground upon which the machinery, which was pur-
chased from the Vogt Machine Company, was installed,
had been paid to Luton by the delivery to him of bonds
of the Providence Water & Utilities Company, of the
face value of $1,500.00, and the court required him to
convey the land to the company, which he did. It, also,
appeared, from the proof, that the company had erected
a "settling basin" upon the lot, as a part of its water

system. After the installation of the ice machinery and boiler, the company operated an ice manufacturing plant, as well as a water plant. The evidence entirely fails to show, whether there was any connection between the two plants, or whether the machinery used with one, was, also, used with the other. There is no evidence which conduces to show to what use the boiler, which was purchased from the Vogt Machine Company, was put to and it can only be inferred, that it became a part of the ice manufacturing plant. The "settling basin" was constructed between the 24th day of March, 1915, and the 22nd day of May, thereafter. The evidence was to the further effect, that the installation of the ice making machinery had enhanced the value of the lot to the amount of the costs of the machinery.

The United States Cast Iron Pipe & Foundry Company, sold to the Providence Water & Utilities Company the metal pipe and fittings used by it in constructing its water plant, and for which it executed three promissory notes, with W. E. Hunter, its surety, and as a part of the contract, deposited with the Cast Iron Pipe & Foundry Company, $18,000.00 worth, par value of its bonds, which were secured by the mortgages to the Louisville Trust Company. The three notes are for the following amounts, and bearing interest, as follows: $5,282.33, and interest from January 2, 1915; $5,500.00, and interest from March 13, 1915, and $3,664.53, with interest from May 14, 1915. It, also, filed a statement in the Webster county court clerk's office, setting up and claiming a lien upon the property, under chapter 79, Ky. Stats., as a materialman, to secure the payment of its debt.

S. K. Luton, was a stockholder and claimed to own $16,000.00 par value of the stock. The entire stock was of the par value of $50,000.00. He, also, claimed, that he was a creditor in various sums of the Providence Water & Utilities Company.

The Louisville Trust Company, trustee, under its mortgages, claimed to have a superior lien for the benefit of the bondholders, upon all the property and franchises, of the Providence Water & Utilities Company, including the ice plant and its equipment, that, which it owned at the time the mortgages were executed, as well as that thereafter acquired, and the right to enforce the lien of its mortgages, and to receive the assets of the

sales of the property, and to distribute same among the bondholders, according to their respective rights.

The Vogt Machine Company, claimed a lien upon the machinery and equipment of the ice plant, and the lot of ground, upon which it stood, as well as the water plant, to secure its debt for the ice plant machinery, and Luton claimed a right of subrogation to the lien claimed by the Machine Company, to secure the portion of its debt, which he had paid.

Previous to the reference of the action to the commissioner to find and report the debts, liens and priorities of the liens of the various creditors and lienholders, a report of the commissioner had been filed showing the insolvency of the corporation, and a judgment had been rendered, directing a sale of all its property. The judgment directed, that the property should be first sold, in two separate portions. The ground upon which the ice plant was situated, including the "settling basin," should be one portion, and all the remainder of the property, the other portion. All of the property should then be sold, together, and the bid or bids, which produced the greatest price, should be accepted. The result was, that the bid for the entire property was accepted, the sale reported and confirmed, without any objection from either of the appellants, as to the manner of the sale.

The commissioner found and reported, upon reference to him to find and report the debts and liens and the priorities, that the claim of the United States Cast Iron Pipe & Foundry Company to a statutory lien was invalid, and it did not except to the confirmation of the report upon that account and cannot complain of the determination, now. The court adjudged, that the Louisville Trust Company, as trustee, had a lien superior to all others, upon all of the property of the corporation, which was embraced by the mortgages, to secure the payment of its bonds, but, that the ice plant was not covered by the mortgages, and that the Vogt Machine Company had a superior lien upon the ice plant, to secure the unpaid balance of its debt, and that S. K. Luton, by subrogation, had a lien of equal dignity upon the ice plant, to secure him in the amount, which he had paid for the corporation upon its debt, contracted for that machinery. The United States Cast Iron Pipe & Foundry Company was adjudged to recover its debt of the corporation, and

that it had a lien upon the bonds held by it, to the amount of the debt, estimating the bonds, at their par value. The excess in amount of bonds, was directed to be cancelled.

(a)  It is conceded, that the ice plant machinery and the ground upon which it was located, was acquired by the Providence Water & Utilities Company, after the execution of the first mortgage to the trustee, to secure the bonds, and but a slight consideration of the description of the property intended to be embraced by the second mortgage, shows, that it did not mention, or intend to embrace any property of the ice plant, or any property, except such as constituted a portion of the water plant. The rule, which applies to property described in a mortgage, which the mortgagor did not then have, but, which is to be afterward acquired by him, is, that the mortgage does not create a lien upon such property, except as between the parties to it, when it comes into existence, except in the instance of the increase of a female animal covered by a mortgage and where property is acquired by a corporation, when undertaking to exercise powers, which are conferred upon it by its charter.  Vinson v. Hallowell, 10 Bush 538; Patterson v. Louisville Trust Company, 17 R. 234; Manly v. Betzer, 91 Ky. 596; Loth & Haas v. Carty, 85 Ky. 591; Ross v. Wilson, 7 Bush 29; Forman v. Proctor, 9 B. M. 124; Phillips v. Winslow, 18 B. M. 431; Cheatham v. Tennell's Assignee, 170 Ky. 432. In certain instances, property acquired by a corporation after the execution of a mortgage by it, to be and used, in performing the work, which its articles of incorporation authorize it to do, is bound by the lien of the mortgage, as against those claiming liens, created subsequent to the mortgage. In the case of public service corporations, as railroad companies and water companies, property acquired after the execution of a mortgage which is sufficiently descriptive to embrace the after acquired property, and which composes an integral, indispensable or necessary part of its machinery or fixtures, to perform things, which it is empowered by its articles of incorporation to do, are covered by the lien of the mortgage, not only as between the mortgagor and mortgagee, but, as between the mortgagee and subsequent purchasers and claimants of liens. Westinghouse Electric Mfg. Co. v. Citizens Street Ry. Co., 24 R. 334; Moulder Holcombs

Co. v. Glasgow Cooperage Co., 173 Ky., 519; Elizabeth &
Paducah R. R . Co. v. Trustee, etc., 12 Bush 233; Phillips
v. Winslow, 18 B. M. 431; Georgetown Water Co. v. Fi-
delity Trust & Safety Vault Co., 117 Ky. 342; Porter v.
Steel Co., 122 U. S. 283; Jones on Mortgages, section 436;
Tippett & Wood v. Barham, 37 L. R. A. (N. S.) 119.
Otherwise, the general rule prevails, which is, that the
lien of the mortgagee, where it provides for a lien upon
afterward acquired property, attaches to the after ac-
quired property in the condition in which it is at the time
it comes into the hands of the mortgagor, as to prior liens,
and the general mortgage does not displace such liens, al-
though they may be junior. 27 Cyc. 1141. Neither the ques-
tion raised, as to whether or not, the Providence Water &
Utilities Company had authority, under its articles of
incorporation, to operate an ice plant, nor whether the
court was in error in entering a *nunc pro tunc* order to
the effect, that the affirmative allegations of all plead-
ings, undenied, should be considered as controverted of
record, and which is insisted, makes a denial of the alle-
gation, that the corporation had authority to own and
operate an ice plant, is important, as all of the parties to
this appeal, affirmatively, alleged, that the corporation
was vested with the authority, and the *nunc pro tunc*
order, would not have the effect of making an issue, upon
a question, upon which the parties are agreed. It does
not necessarily follow, however, that because, the cor-
poration had authority, under its articles of incorpora-
tion and franchise, to operate an ice plant, that it created
a lien upon the ice plant, by the mortgages executed by
it to the Louisville Trust Company. It is elementary,
that before a mortgage will create a lien upon property,
which will be valid as against purchasers, or those sub-
sequently acquiring a lien upon it, is that, such a de-
scription must be given in the mortgage, of the property
intended to be mortgaged, as will give notice to any one,
who deals with the mortgagor, of the condition of the
property, dealt with. One of the reasons, upon which is
founded the doctrine, that a mortgage embracing after-
ward acquired property, when applied to public service
corporations, will displace the lien for materials fur-
nished, or the lien created by a sale to the corporation,
under a contract, that the vendor is to retain the title
until paid for, of things, which became an integral and
necessary part of the property for the operation of its

authorized business, is, that the materialman, or the vendor with a contract to retain the title of the property sold until paid for, has notice by reason of the mortgage, that the lien of the mortgage attaches to the property, as soon as the mortgagor becomes the owner.   To make the notice effective, then, it conclusively follows, that the description of the property undertaken to be mortgaged, must be such as to enable one who reads it, to know to what property, it attaches.   The general rule applying to the description of property acquired and after the mortgage is executed, necessary to fix the lien of the mortgagee upon it, as affecting persons, who deal with the mortgagor, as stated in 27 Cyc. 1141, is: "But no lien will attach to after acquired property, unless it is mentioned in the mortgage, or referred to in terms clearly showing an intention to bind it."   It will be observed, that in the description of the property intended to be covered by the first and second mortgages, no mention is made of an ice plant, or anything pertaining to one.   The water plant, and everything pertaining to it, then existing or thereafter to be acquired, is fully covered by the mortgages, as well as all real estate thereafter to be acquired, for the purposes of the water plant.   It is insisted, that inasmuch as the terms used in the description of the property, intended to be covered by the first mortgage, in the concluding clause of the description, are general and include all property, of whatsoever kind, which the mortgagor may thereafter own, that it embraces the ice plant, which the mortgagor thereafter acquired.   It will be observed, however, that preceding the general terms used, the property, is specifically described, and the water plant property, which was then owned or thereafter to be acquired, is stated specifically and all the items were connected with, and a part of the water plant, and for the purposes of the water plant, and the general terms are controlled by the words preceding "herein stated and set forth."   The operations "herein stated and set forth," apply, alone, to the water plant, by their terms.   If the general terms do not attach the lien of the mortgage to the ice plant, then by no possibility can the mortgage cover the ice plant.   In 27 Cyc. 1144, the text is: "In case, however, a description of certain items of real and personal property is followed by a general grant of 'all other personalty' or 'all other personal effects of every nature,'" the gen-

eral terms will include only such property as is *ejusdem generis* with that enumerated."

(b)    If the land upon which the ice plant was situated could be held to be covered by the mortgage, then, before the lien of the mortgage would attach to the ice plant machinery and equipment, as they are not mentioned, in the mortgages, it would have to be shown, that they are so attached to the land, that they could not be removed, without injury to the real property, and thereby cause a diminution of the mortgage security, which is not shown.   Clore v. Lambert, 78 Ky. 224.   The evidence does not show, that the land upon which the ice plant machinery is situated, is covered by either mortgage, except the portion of it, which is occupied by the "settling basin."   Hence, the ice plant being free of any lien, there is no reason why, the contract for a sale of the machinery of the ice plant, with the provision, that the seller should retain the title, until the price was paid, and with the right to remove it, in default of payment, should not create a lien in favor of the Voght Machine Company, in the nature of a mortgage lien, upon the machinery and equipment sold by it, to secure the Voght Machine Company, in the payment of the price.   The contract shows, that a sale of the property was made, and the retention of the title until payment was intended as a security.   Baldwin & Co. v. Crow, 86 Ky. 679; Welch v. National Cash Register Co., 19 R. 1664; Wicks v. McConnell, 102 Ky. 435; Townsend v. Frazer, 21 R. 1183; Starr Drilling Machine Co. v. McLeod, etc., 29 R. 84; Singer Sewing Machine Company v. Dyer, 156 Ky. 159; Aultman v. Meade, 121 Ky. 241; Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky. 339; Greer v. Church, 13 Bush, 430; Montenegro-Rheim Music Co. v. Bueris, 160 Ky. 561.

The evidence is undisputed, that Luton paid $2,202.90, of the debt of the corporation to the Voght Machine Company, at the request of the debtor, and upon its agreement, that he should have the benefit of the liens securing the debt, which the creditor held, to the extent that he paid it.   Under these circumstances, Luton was entitled to be subrogated, to the lien of the Voght Machine Company, to the extent, that he paid its debt.   Barker v. Boyd, 24, R. 781; Bartley v. Knott, 130 S. W. 1096; Baker v. Ward, 7 Bush, 240; McLaughlin v. Daniels, 8 Dana, 182; 37 Cyc. 269.

The contention, that the Voght Machine Company had a lien upon the lot of ground upon which the ice plant was situated, and, also, upon all the other lands and property of the corporation, can not be sustained. The "settling basin," and the ground upon which it stood, was embraced by the mortgages, for reasons heretofore stated, and the mortgages created a superior lien upon it. The ice plant was such a manufacturing plant, as is included in the term, "public improvement," as provided for, in section 2492, Ky. Stats., and a lien for material furnished, or labor performed upon such a plant, does not attach, unless the claimant filed a statement in the office of the clerk of the county court, within sixty days, after the last day of the month in which he furnished materials or performs labor. The Voght Machine Company ceased to furnish materials, or perform labor, under the contracts, under which it sold the machinery, according to the allegations of its pleadings, on June 10, and the statement under which it attempts to claim the lien, was not filed, until November 20th. This conclusion renders unnecessary, any discussion of the contention, that it waived its right to claim a materialman's lien by the contract it made to retain the title to the property furnished until the debt should be paid.

It is contended, that the court, by its judgment, apportioned to the satisfaction of Voght Machine Company's and Luton's lien, a much greater sum, than its lien covered, and this contention seems to be well founded. The lien only attached to the proceeds of the sale of the machinery, but, the court applied the proceeds of the sale of the lot of ground upon which the machinery stood, to the lien, deducting from it $750.00 as the value of the "settling basin," and applying the latter sum to the lien of the bondholders. Of course, the extent of the respective liens should have been ascertained before the sale and the sale so made, that it could be known, without dispute, the proceeds of which portions of the property should be applied to the satisfaction of the respective liens. The entire property was, however, sold, together, for a gross sum, and the sale confirmed, without any objection, from any of the parties. There is now, no appeal from the judgment of sale. There is no evidence in the record, as to the proportionate value of the ice plant machinery, or the ground upon which it stood, or the

"settling basin" and the land upon which it stood. The method, by which the court arrived at the sum, which the ice plant, including the "settling basin," represented at the selling price, seems to have been arbitrary, as, well as the sum, which it fixed, should be considered as the price of the "settling basin." Inasmuch as the parties did not furnish any evidence to enable the court to make the proper apportionment to the respective liens, upon some tangible basis, it might be said, that nothing is shown, here, that demonstrates that the chancellor's apportionment was erroneous, but, the judgment does show, that the price of the lot upon which the ice machinery was located, was applied to the payment of the Machine Company's and Luton's liens, when they had no lien upon it. The court should have ascertained, by a reference to its commissioner, or by, further, proof otherwise, what the proceeds of the sale of the machinery, the "settling basin" and the ground upon which it stood, and the lot upon which the ice plant was situated, excluding the "settling basin," each amounted to, of the gross sum for which all the property sold, and applied the first to the Voght Machine Company and Luton's liens, the second to the lien of the bondholders, and the last sum to be distributed, as unencumbered property of an insolvent. This the court should yet do.

(c)    The interest upon the debt held by the United States Cast Iron Pipe & Foundry Company, amounted, at the time of the judgment, to several hundred dollars, and the court denied it the right, to a recovery of the interest. This, was erroneous, as it was entitled to recover the interest from the time its debt bore interest until the judgment, or to some time, fixed by the court, to which time, the interest on all the debts owing by the corporation, and which participated in the distribution of the proceeds, should have, alike, been computed.

(d)    The refusal of the court to adjudge anything against Luton, at the suit of creditors, on account of alleged unpaid subscriptions to stock, was not an error. All or a greater part of the stock had been issued to Hunter, in consideration of his transferring to the corporation the franchise under which it operated, and certain rights of way, and a claim upon his part, that he had furnished the piping and other indispensable property to the corporation. When Luton became interested in the corporation's affairs, he agreed to lend it $5,000.00,

and to sell it a certain lot and take in exchange, bonds of the corporation, when Hunter gave him one-third of the stock. If Hunter was the real owner of the stock, it would seem, that he was authorized to donate it to another, if he desired, but, it is insisted, that Luton had knowledge of Hunter's invalid claim, when he received it. However, that may have been, the courts are unanimous, in holding, that the liability of a stockholder for an unpaid subscription is controlled by the laws of the state, where the corporation is created and exists. Williams' Exor. v. Chamberlain, 123 Ky. 50; Horton v. Sherill-Russell L. Co., 147 Ky. 226; Husbands v. Lineham, 168 Ky. 304. There is neither pleading nor proof in the record, as to what the law of the state of Delaware is upon the subject, and the articles of incorporation not being a part of the record, no light can be obtained, as to any requirement of the stockholders from them. Judicial notice is not taken of the law of another state. In the state of case, we are relegated to the presumption, that the common law of Delaware governs the subject and that such common law is the same, as the common law of Kentucky. L. & N. R. R. Co. v. Smith, 135 Ky. 462; Yellow Poplar Lumber Co. v. Ford, 141 Ky. 7; I. C. R. R. Co. v. Jordan, 117 Ky., 512. According to the common law, creditors could not hold stockholders liable on stock which had been issued for property, although the value of the property, as agreed upon, was greatly in excess of its real value. Such a transaction could be assailed upon the ground of fraud, only, and hence, the contract must stand as made, or be totally rescinded. Horton v. Sherill-Russell L. Co., supra; Fogg v. Blair, 139 U. S. 118; Phelan v. Hazard, 19 Fed. Cases, 429; Cook on Corporations, 6 Ed., vol. 1, sec. 46.

(e)   For the foregoing reason, it was error, for the court to adjudge void the bonds, pledged with the United States Cast Iron Pipe & Foundry Company, in excess of the amount of the debt, which they were pledged to secure. The corporation being created and existing under the laws of the state of Delaware, the power to execute and dispose of its bonds, is governed by the laws of that jurisdiction, and it not having been shown, that any law exists in that state, which renders void, the excess in the amount of bonds over the debt intended to be secured, the presumption arises, that the common law prevails upon that subject. Under the common law, the excess was

not void, as it is, under section 193 of the Constitution and section 568, Ky. Stats., and as construed by this court in Mayfield Water & Light Co. v. Graves County Banking & Trust Co., 170 Ky. 56, and Bennett v. Stewart, 161 Ky. 264, when attempted by a domestic corporation. At the common law, a corporation authorized to issue bonds, might pledge them to secure its indebtedness, and in the absence of a statute limiting the power of the corporation to so pledge its bonds, the pledge of an excess, in amount par value of bonds, over the amount of the debt, did not render the excess void, if the transaction was in good faith, and not a device to increase its indebtedness by imposing obligations upon it, which it should not assume. 10 Cyc. 1169, 1170, 7 R. C. L. 598; Thompson on Corporations, vol. 3, sec. 2301.

(f) It is insisted, that the court erred, in allowing to Luton the benefit of a lien upon the bonds of the corporation, which were pledged to him, by Eastman, as a security for the personal debts of Eastman to Luton, upon the ground, that Eastman was not the owner of the bonds pledged by him, and that Luton should have, before accepting the bonds as security, investigated and ascertained that Eastman was their owner. This contention, fails, for the reason, that the bonds were negotiable by delivery, and the evidence fails to show, that Eastman was not their owner, or had not right to negotiate them. If Luton had knowledge, that Eastman was not the owner of the bonds, he would not be entitled to the benefit of the security. The proof shows, that Eastman was the owner of $2,500.00 par value, of the bonds, and Luton was not the custodian of the bonds. The evidence does not show, that Luton received them, as pledges, other than in good faith.

(g) Luton was allowed $600.00 for his services in managing the affairs of the corporation, and doing labor for it, after the institution of this action, and after he had sought the appointment of a receiver, and to be relieved of his duties, in connection with the corporation. All the other officers, and directors had abandoned the corporation and left the country, and Luton, alone, conducted its affairs, during the time stated. No one claims, that the sum allowed, is in excess of the value of his services to the corporation, and it seems, that he was equitably entitled to be compensated for them, and the allowance paid as costs of the action.

(h)   The $1,000.00 which Wynns was adjudged to pay to the corporation was adjudged to be applied to the lien of the bondholders, but the U. S. Cast Iron Pipe & Foundry Co. claims that it should have been adjudged to it, as the purchaser of the property. The terms of sale passed to the purchaser, the assets of the corporation, except unpaid subscriptions, to stock and bonds. The $1,000.00 seems to have been a debt for the purchase of a bond, and hence did not pass under the sale.

The judgment is reversed to the extent that it is herein held to be erroneous, and the cause remanded for proceedings not inconsistent with this opinion.