## Bailey-Ferguson Coal Company v. Kennedy.

## Kennedy v. Bailey-Ferguson Coal Company.

(Decided May 13, 1927.)

### Appeals from Floyd Circuit Court.

1. Mines and Minerals.—Mineral deed granting coal company exclusive rights of way for all railroads, pipe lines, etc., and right to erect, maintain, and remove buildings, derricks, etc., as deemed necessary or convenient, gave lessee of its successor in title no right capriciously to erect unnecessary buildings or do unnecessary things, such as destroying fences, barn, gardens, and trees, changing creek bed, and obstructing outlet from grantor's property.

2. Mines and Minerals.—Jury, which saw premises damaged by destruction of fenses, barn, etc., change of creek bed, and obstruction of road by grantee of minerals, had right to form their own opinions, independent of testimony, as to amount of damage.

3. Mines and Minerals.—Where appellee's witnesses fixed damage by coal company's destruction of fences, barn, etc., change of creek bed, and obstruction of road at $6,000, Court of Appeals cannot say that evidence does not support jury's verdict for $3,000.

F. W. STOWERS and B. M. JAMES for appellant.

A. J. MAY and B. F. COMBS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

David Kennedy recovered a judgment against the Bailey-Ferguson Coal Company for $3,000.00 to reverse which it has prosecuted the first of these two appeals. David Kennedy was enjoined from preventing, obstructing, or in any wise interfering with plaintiff in the opening of coal mines and the mining or removal of coal from the tract of land described in the petition, and from interfering with plaintiff, obstructing it in the building of

miners' houses and residences and any other buildings, railroads, tramways, and mining improvements whatsoever, and, feeling himself aggrieved, he has appealed. We shall dispose of both of these appeals in one opinion.

David Kennedy on the 1st of October, 1906, was the owner of 502.6 acres of land in Floyd county. On that day he executed to the Beaver Creek Coal & Coke Company a deed by which, for and in consideration of $5 per acre, he conveyed to it the coal, minerals, and timber on his land and granted to it certain rights, so elaborate that it is much easier to describe what Kennedy had left than it is what he conveyed, and that was this:

> "There is reserved to the parties of the first part all the timber upon the said land except that necessary for the purpose hereinbefore mentioned; and there is also reserved the free use of said land for agricultural purposes so far as such is consistent with the rights hereby bargained, sold, granted, and conveyed; and the right to mine and use coal for their own personal household and domestic purposes.

> . . .

> "It is understood that grantor reserved all oil and gas, also all timber from 12 inches and up in diameter clear of bark, stump high. It is further understood that if grantor's dwelling house, garden, or orchards are damaged by the construction of railroad, tramroads, or mining grantor is to have reasonable damage therefor."

By mesne conveyances these rights passed to the Beaver Creek Consolidated Coal Company. On April 1, 1921, the Beaver Creek Consolidated Coal Company sublet to the Stephens Branch Coal Company that part of the Kennedy property lying west of the Stephens Branch and between it and the Molly Cabin Branch. On the same day, it sublet to the Bailey-Ferguson Coal Company that part of the Kennedy property lying east of the Stephens Branch, and it appears that about the same time it sublet to the May Coal Company that part of the Stephens property lying south of the Molly Cabin Branch and west of the Stephens Branch. While the lessees were separate organizations, they seemed to have been very closely related and acted in concert in building their railroads, switches, tipple tracks, etc., and immediately after obtaining these leases they began their operation. Kennedy,

perhaps, had not dreamed when he foolishly executed this deed that he was parting with so much of his property, that he had so few rights left, and when these companies began to exceed what he regarded as their rights, he resisted them. One S. C. Ferguson was the director of operations for these lessees. He appears to have had but little diplomacy, and as a result, feeling between him and Kennedy grew so intense, and Kennedy interfered with the operations to such an extent that on May 31, 1921, the Bailey-Ferguson Coal Company filed a petition in equity against him, sought to enjoin him from interfering, and about the same time, a similar suit was filed by the Stephens Branch Coal Company against Kennedy. On February 21, 1922, Kennedy filed an answer and counterclaim to this petition, the answer being merely a traverse, and the counterclaim being an effort on his part to collect $25,000.00 damages which he claimed to have sustained by acts done by the Bailey-Ferguson Coal Company in excess of its rights. In May, 1923, Kennedy entered a motion for an issue out of chancery and a trial by jury of the question of damages, which motion the court sustained. On October 21, 1924, the Bailey-Ferguson Coal Company amended its petition and sought a judgment against Kennedy for $30,000.00, which it alleged it had been damaged by Kennedy's acts. Kennedy filed a traverse to the claim of the Bailey-Ferguson Coal Company for damages, and it traversed Kennedy's claims for damages. It seems that in the suit begun by the Stephens Branch Coal Company the same steps had been taken, similar pleadings had been filed, and the two records were in the same condition when on February 17, 1925, Kennedy moved the court to try the two cases together before the same jury, which motion was overruled, and the trial of the Bailey-Ferguson Coal Co. v. Kennedy was begun. During the progress of that trial these coal companies withdrew their objections to the trial of the two cases together. They also amended their claims for damages and reduced their claims from $30,000.00 each to $5,000.00 each. The evidence was heard, the jury viewed the premises, and returned a verdict in favor of Kennedy for $3,-000.00 against the Bailey-Ferguson Coal Company and $1,000.00 against the Stephens Branch Coal Company. The Bailey-Ferguson Coal Company is complaining of this verdict because it is excessive, and not supported by the evidence, and because evidence was admitted bearing

on the question of obstruction of passways and depriva-
tion of the use by Kennedy of the surface of his land.

Among other rights that had been granted to the
Bailey-Ferguson Coal Company were these:

> "The exclusive rights of way for any and all
> railroads, tramroads, haul roads and other ways,
> pipe lines, telephone and telegraph lines. . . . The
> right to build, erect, alter, repair, maintain, and op-
> erate upon said land, and at its option to therefrom
> remove any and all houses shops, buildings, tanks,
> derricks, inclines, tipples, dams, coke ovens, store
> and ware rooms, and machinery and mining and any
> and all equipment, that may, by party of the second
> part, its successors, or assigns, be deemed necessary
> or convenient."

In the recent case of Collins v. Lackey Mining Co.,
219 Ky. 31, 292 S. W. 1091, we had before us a similar
contract, and we there quoted and approved this which
was written in the case of Case v. Elk Horn Coal Corp.,
210 Ky. 700, 276 S. W. 573:

> "Clearly, the defendant has the paramount right
> to the use of the surface in the prosecution of its
> business for any purpose of necessity or conven-
> ience, and of this it is to be the judge, and unless it
> exercise this power oppressively, arbitrarily, wan-
> tonly, or maliciously, plaintiff cannot complain."

This contract gives the Bailey-Ferguson Coal Com-
pany no right capriciously to erect unnecessary buildings
or do unnecessary things. By the terms of the deed by
which Kennedy granted these extraordinary rights, it
was provided that damages should be paid for any in-
juries to his garden, orchard, or dwelling house done by
the grantees. It seems from the evidence that about a
mile and a half of Kennedy's fencing was destroyed.
They tore down and destroyed a stock barn, they changed
the bed of Stephens creek and placed the flow of this
stream within 9 feet of a tenant house occupied by a son-
in-law of Kennedy as a result of which this son-in-law
and his wife had to abandon the house. Kennedy, besides
his own house, had three tenant houses on these premises,
and near each one of these houses he had gardens and
orchards. Two of these gardens were destroyed. In the

construction of their railroads, Kennedy claims about 100 apple trees and 30 peach trees were destroyed. They built a town on the property, and so constructed these railroads that the road or outlet by which Kennedy got in and out from his property was obstructed. As this jury saw these premises, we feel that what we said in the case of L. & N. R. R. Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983, is quite applicable here:

> "In addition to the evidence of the witnesses, the jury had the benefit of seing for themselves the property, and they had the right to and doubtless did form opinions of their own independent of what the witnesses said as to the amount of damage the club has sustained."

Witnesses for Kennedy fixed this damage at $6,-000.00  The jury did not fix it so high, and we are unable to say that the evidence does not support the jury's verdict.

Therefore the judgment against the Bailey-Ferguson Coal Company is affirmed, and, as the judgment enjoining Kennedy from interfering with the Bailey-Ferguson Coal Company seems not to have gone beyond the terms of the deed he gave, it is also affirmed.

The whole court sitting.