# Wells v. North East Coal Company.

(Decided June 15, 1934.)

HILL & HOBSON and B. M. JAMES for appellant.
KIRK & WELLS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant, Ireland Wells, is the owner of a tract of land located in Johnson and Floyd counties on Johns creek, containing approximately 51 acres. Long before he acquired title to this property, his predecessor in title, Martha Burchett, had conveyed the mineral rights in this land to the late Hon. J. C. C. Mayo, under whom the appellee, the North East Coal Company, claims. In 1930 the appellant instituted this suit in the Floyd circuit court, seeking to recover of the appellee the sum of $2,500, for alleged damage done his land, caused, as it was averred, by the construction of a tramroad across the property, the dumping of slate thereon, the construction, operation, and maintenance of a high-tension electric line, also a telephone line, the removal of timber which appellee used on other lands in connection with its coal mining operations, the erection of a trestle across the bottom land, the construction of a bridge across Johns creek, and the removal of lateral support causing slides in the surface of the land. The

appellee defended on the ground that under the mineral deeds from Burchett to Mayo, under which appellee held, it had the right to do all the things of which appellant complains. There were two trials of this case. On the second trial, the court submitted to the jury only the issue of appellee's liability for breaks in the hillside land caused by the removal of lateral support. The jury found for the appellant in the sum of $600 on this issue. The appellee has paid that judgment and that issue has been disposed of. On all the other issues in the case, the court peremptorily instructed the jury to find for appellee, and, from the judgment entered on the verdict so found, the appellant prosecutes this appeal.

We are first confronted, as the appellant concedes, with the proper construction of the mineral deeds under which appellee contends it has the right to do the things of which the appellant complains. The pertinent provisions of those deeds are these: The grantor (Martha J. Burchett) grants and conveys to the grantee (John C. C. Mayo) all the mineral, oil, and gas under her land, and, to quote from the deed:

> "The exclusive rights of way for any and all railroads and ways that may thereafter be located on said property, either by said party of the second part, heirs and assigns, or by any other person or corporation under the authority of the said party of the second part or his assigns in, on and under" the granted land, "together with the right to enter upon said land and use and operate the same and the surface thereof in all and any manner that may be deemed necessary and convenient by the said party of the second part, his heirs and assigns for mining and removing therefrom all the said minerals and products, and the manufacture of the same and shipping the said articles and products above named, as well as to remove the products taken from out of any other land owned by the party of the second part, his heirs, vendees and assigns, or from any land which they may hereafter acquire with the exclusive right to erect thereon, maintain and remove therefrom all such structures as may be deemed necessary or convenient by the said second party, his heirs, vendees or assigns in the free and full exercise and enjoyment of the rights and privileges herein granted."

It appears from the evidence that all the coal, or substantially all, under the Burchett land has been mined and exhausted. The appellee has constructed a tramroad from an adjoining operation on land owned by it across appellant's land to carry the coal mined from this adjoining land out to the railroad. In constructing this tramroad, a bridge was built across a creek and a trestle through the bottom lands of appellant. Then comes a fill, and then the tramroad skirts the side of a hill which was cut away in part to afford room for the track. A high-tension electric line has been constructed through the appellant's property for the purpose of conducting electricity to the appellee's mines and of furnishing power for the tramroad. On the poles which support the wires that carry this electricity are strung telephone wires used in the operation conducted on the adjoining property. In constructing the tramroad, some little timber was cut from the right of way. The evidence most satisfactorily discloses that this timber was practically of no value save as to a very small quantity. Appellant in his testimony admitted that part of this timber had been used on his land, which he concedes, or must necessarily concede, the appellee had a right to do under its deed. There is no showing in the record whatever as to the quality or value of the timber taken by the appellee off this land and used on the adjoining operation. Appellant introduced some evidence to show that the fill upon which the tramroad was erected occupied more land than was, in the opinion of the witnesses who were not experts, absolutely necessary, and that perhaps more slate and debris to make the fill had been dumped thereon than was, in the opinion of these witnesses, absolutely necessary. It may be said in passing that the great mass of testimony, especially that of the many engineers who testified for appellee, is to the effect that the tramroad did not occupy as much space as good engineering practice demanded. But, be that as it may, we are of opinion that, under the provisions in the deed above quoted, appellee is not confined in the exercise of its rights in appellant's land to that which may in the opinion of a jury be absolutely necessary. The type of provisions of mineral deeds here in question appear in most of the coal mine leases in Eastern Kentucky, and have been before this court in many cases. As said in the case of Pike-Floyd Coal Co. v. Nunnery, 232 Ky. 805, 24 S. W. (2d) 614, 615:

"Where the mineral deed confers upon a grantee the use of the surface of a tract of land in the prosecution of its business for any purpose of necessity or convenience, the grantee cannot be held responsible in damages for exercising its right, unless it acted arbitrarily, wantonly, or maliciously."

And speaking to the same point in the case of Case v. Elk Horn Coal Corp., 210 Ky. 700, 276 S. W. 573, 574, this court said:

"Clearly the defendant has the paramount right to the use of the surface in the prosecution of its business for any purpose of necessity or convenience, and of this it is to be the judge, and unless it exercise this power oppressively, arbitrarily, wantonly, or maliciously, plaintiff cannot complain."

See, also, Bailey-Ferguson Coal Co. v. Kennedy, 219 Ky. 819, 294 S. W. 467; Collins v. Lackey Mining Co., 219 Ky. 31, 292 S. W. 1091.

There is no testimony whatever in this case that the appellee, in erecting its tramroad, power line, or telephone line acted arbitrarily, wantonly, or maliciously. The evidence is all one way that it did not so act. There being no satisfactory evidence to go to the jury concerning the timber as we have pointed out above, the court did not err in peremptorily instructing the jury as it did if appellee had the right to erect any tramroad, transmission line, or telephone line across the land of the appellant to be used in connection with the adjoining operation. The deed expressly provides that Mayo and his assignees and those acting under his authority had the right to use the surface of the Burchett land "for any and all railroads and ways," and the right "to use and operate" that surface "in all and any manner that may be deemed necessary and convenient" and "to erect thereon, maintain and remove therefrom all such structures as may be necessary or convenient" by the grantee, not only for mining and removing from the Burchett land all the minerals and products in the manufacture of the same and the shipping of the same, but also for the purpose of removing minerals and products in the manufacture of the same and the shipping of the same from out any other land then owned or which might thereafter be acquired by said Mayo and his assigns. The deed expressly gave Mayo and his assigns the power to maintain and remove

and erect on the Burchett land all structures as they might deem necessary or convenient for the mining and removal, manufacture and shipping of minerals and ores from other land then owned by Mayo, or which he might thereafter acquire. The evidence clearly discloses that the tramroad, the electric power line, and telephone line are structures used in the mining, removal, and shipping from the adjoining land of the minerals and such as are deemed necessary and convenient for that purpose by the appellee. The Pike-Floyd Coal Co. Case, supra, in which a mineral deed very similar in its terms to that in the instant case was involved, does not militate against these views as appellant strongly contends. It was simply held in that case that the use of the surface of the land for a dump on which to deposit slate and other debris from an adjoining operation could not be justified under the terms of the mineral deed. However, the distinction between the use of the surface for a dump for debris from an adjoining operation, a use that has but a very remote, if any, connection with the purposes expressed in the mineral deed and the use of the surface for a tramroad, an electric power line and a telephone line, uses intimately connected with the purposes set out in the mineral deed, is quite manifest. It is argued, however, that there is no showing in this record that at the time Mayo took the Burchett deeds he then owned the land from which the coal is now being taken from and in connection with the use of the structures here complained of, and it is insisted that an easement cannot be created in a deed to become appurtenant to property to be acquired "in futuro."

Easements are appurtenant or in gross. If appurtenant, there must be a dominant and a servient tenement. But we perceive no reason why as between the parties there may not be an agreement or contract to grant an easement appurtenant to property to be acquired in futuro, which, as between the parties and their privies with notice, is enforceable when the dominant tenement is acquired, just as a mortgage covering after acquired property is good as between the parties and their privies with notice. See United States Cast Iron Pipe & Foundary Co. et al. v. Henry Vogt Machine Co., 182 Ky. 473, 206 S. W. 806. Therefore, conceding that the property from which the coal is now being taken was not in the ownership of Mayo at the time of the

68

Burchett deeds, yet, when such land was acquired, as between Burchett and her privies with notice, appellant being such, and Mayo and his privies, the easement attached thereto by virtue of the Burchett deed. Hence we are of opinion that the trial court did not err in peremptorily instructing the jury as it did, and its judgment is affirmed.

Whole court sitting, except Judge Thomas, who was absent.