## Pindell *vs.* Grooms *et. al.*

### APPEAL FROM FAYETTE CIRCUIT.

1. G. mortgaged to P. a horse, at the time in the possession of J., by delivery of the sheriff in an action in which the horse was the subject of controversy: Held that the mortgage was good to pass to P. such equitable title in the horse as would entitle him to the benefit of a judgment afterwards obtained by G. against J., for the value of the horse, and that P.'s equity was paramount to the claim of J. for the price of the horse, not due at the date of the mortgage, and which could not, moreover, be set-off against G.'s claim for the horse, or value thereof.

2. All claims growing out of and adhering to property, right of action for damages *ex contractu*, and interests in actions pending, may all be assigned or mortgaged for the benefit of creditors. (*Comegys vs. Vassee,* 1 *Pet* 193; *Leitch vs. Hollister,* 4 *Comstock,* 211; *North vs. Turner,* 9 *Sarg. & R.* 248; *Burrill on Assignment, p.* 67.) Not so with causes of action growing out of personal wrong to the debtor.

In July, 1854, Jones sued Grooms in the Fayette circuit court, alledging that Grooms had fraudulently obtained from him a grey horse worth $120; and having made the proper affidavits, and given the bond required by law, with Logan as surety, obtained possession of the horse. Trial of this action was had in February, 1855, and judgment was rendered

for the defendant for $100 in damages. Jones having transferred the note executed to him on the 28th of June, 1854, by Grooms and Gaugh, for $100, the price of the grey horse sold by Jones to them, to Logan, he (Logan,) withdrew the same from the circuit court, and instituted suit thereon in the quarterly court of Fayette county, and obtained judgment thereon on 2d day of June, 1855, upon which execution was duly issued and returned "no property."

On the 30th day of April, 1855, Pindell brought his suit in the Fayette circuit court against Logan, Jones, and Grooms, claiming the horse referred to, under a mortgage dated the 4th August, 1854.

On a hearing of the case Pindell's petition was dismissed as to Jones and Logan, and he has appealed to this court.

*R. Pindell*, for appellant—

It is competent for a party to execute a mortgage upon personal property in adverse possession or in the custody of the law. (*McCalla vs. Bullock*, 2 *Bibb*, 288; *Kennaird vs. Adams*, 11 *B. Mon.* 105, and other cases.)

Upon the execution of the mortgage, then, Pindell acquired a lien on all the interest of Grooms in the gray horse. The judgment in his (Grooms) favor in the suit brought by Jones was conclusive as to the title in this case. I think it would be very difficult to show that the property was encumbered by a lien, but that the demand for the return or value of the property on the bond given by Logan was in a different condition, and subject to other rights. Is not the horse the principal and the other the incident? In what way did the lien of Pindell become defeated?

Jones sold his horse to Grooms and Gaugh, who were insolvent. He had a right so to do. Their insolvency did not in any way affect Grooms' title, and he had a right to encumber it and did do so. Jones

sued them, and obtained judgment, and execution returned "no property found," and the transfer of this note to Logan may have given him a right to off-set the demand as against Grooms; but how can that come in and cut off Pindell's lien by his mortgage? Here is the fixed and controling fact in the case? Had Logan a lien on the horse for his indemnity when he signed the bond? Most certainly not, as the court decided that the horse belonged to Grooms. Had Jones any? Clearly not, as he took no mortgage, but took personal security, and this question was decided in the same suit. Insolvency in vendees gives no such lien. When did Logan acquire any equity against Grooms? By the transfer to him on the 26th February, 1855, by Jones of the note given by Grooms and Gaugh? Pindell's lien had commenced when the mortgage was given on the 3d of August the year before, 1854.

When Logan signed the bond he put himself precisely in the place of the gray horse, and became surety for his liabilities exactly as they existed, and because he does not produce him, it seems to me absurd to say that he thereby deprives Pindell of his lien, and creates new equities in his own favor. Wherefore a reversal is asked.

*Breckinridge & Beck*, for appellees—

We feel confident that the judgment of the court below will be affirmed for several reasons. The mortgage under which Pindell claims was executed by Grooms to him, when the horse was in the adverse possession of Jones under the order of court, and the mortgage consequently void. Pindell, who was Grooms' attorney in the first case, was guilty of maintainance, by knowingly attempting to acquire title to property *pendente lite*, and the conveyance to him was for that reason void. This original claim in the petition was only for $100, and no appeal lies from the judgment to this court; and his appeal ought to be dismissed.

The judgment in the original case was not for the return of the horse, but for $100 01, in damage; and the judgment obtained in the quarterly court by Logan, on the note of Grooms, having been returned "no property," was a good set-off to the judgment of Grooms against Jones and himself. It is this $100, and not the horse, which Pindell seeks to recover, and to disregard the set-off of the other judgment.

He has obtained judgment against Grooms for the sale of the other mortgaged property, which is more than sufficient to pay his demands, as appears from the mortgage, in our opinion. He has failed to show that his debt is not so satisfied.

Upon all the grounds we expect the judgment below to be affirmed.

**Dec. 9, 1857.**       Judge SIMPSON delivered the opinion of the court.

The first question that arises in this case is, did the mortgage, which was executed by Grooms to Pindell on the 3rd day of August, 1854, transfer to the mortgagee any title to the horse, which was then in the possession of Jones, and the right to which was a matter of controversy in an action then pending between Grooms and Jones?

As the possession of the horse had been taken from the mortgagor, and delivered to Jones by process of law in the action then pending between them, and was subject to restitution by the final judgment of the court, in the event that the plaintiff did not succeed in maintaining his action, it is very questionable whether, under these circumstances, the property should be regarded as being in such a condition as to preclude the mortgagor from passing the legal title to it, to a purchaser. But be this as it may, we entertain no doubt that a mere *chose* or *right* of *action* may be assigned or mortgaged for the indemnity of a surety, or to secure creditors. The *legal* title to the property will not pass, which was all that was decided in the cases of *Stockdale vs. Fugate,* 2 *Mar.* 136, and *Young vs. Furgurson,* 1 *Litt.* 298. But an equita-

1. G. mortgaged to P. a horse, at the time in the possession of J., by delivery of the sheriff in an action in which the horse was the subject of controversy:— Held, that the mortgage was good to pass to P. such equitable title in the horse as would entitle him to the benefit of a judgment afterwards obtained by G. against J., for the value of the horse, and that P.'s equity

ble title to it will vest in the mortgagee or assignee, who, in a case like the present, will be equitably entitled to the benefit of any judgment that may be rendered in favor of the mortgagor in the action pending between him and the claimant of the property.

All claims growing out of and adhering to property, rights of action for damages *ex contractu*, interests in actions pending and undetermined, may all be assigned or mortgaged for the benefit of creditors. (*Comegys vs. Vassee*, 1 *Peters*, 193; *Leitch vs. Hollister*, 4 *Comstock*, 211; *North vs. Turner*, 9 *Serg. & R.* 248; *Burrill on Assignments, page* 67.)

The object of the law in authorizing such assignments is manifestly to benefit creditors, by making all the property and rights of property belonging to the debtor available to their payment. But causes of action arising out of a personal wrong to the debtor, not being for the recovery of damages for property illegally taken out of his possession, or unlawfully withheld from him, are not embraced by the reason or spirit of this rule of law, and may not therefore be legally assignable.

In this case, then, the right to the benefit of any judgment that might be rendered in the action between the mortgagor and Jones vested in Pindell, the mortgagee, he being equitably entitled under the mortgage to the horse which was the subject of controversy in the action. Jones as Grooms' vendor had no lien upon the horse at the time the mortgage was executed, nor had he then an equitable right to set-off his debt on Grooms against the claim of the latter against him, not only because his debt was not then due, but also because the claim of Grooms was upon the horse in contest, or for his value, and was not the proper subject of a set-off. Consequently, the mortgagee has the elder and best equitable right to the judgment against Jones, and for which Logan, his surety, is responsible. The court below therefore erred in dismissing the plaintiff's petition as to the

PINDELL
*vs.*
GROOMS *et. al.*

was paramount the claim of J. for the price of the horse, not due at the date of the mortgage, and which could not, moreover, be set off against G.'s claim for the horse, or value thereof. 2. All claims growing out of and adhering to property, right of action for damages *ex contractu*, and interests in actions pending, may all be assigned or mortgaged for the benefit of creditors. (*Comegys vs. Vassee*, 1 *Peters*, 193; *Leitch vs. Hollister*, 4 *Comstock*, 211; *North vs. Turner*, 9 *Sarg & R.* 248; *Burrill on Assignments, p.* 67.)— Not so with causes of action growing out of personal wrong to the debtor.

Northern B'k
    vs.
Farmers Bank.

defendants Jones and Logan.   If, however, the mortgagee can be indemnified out of the  other property embraced by the  mortgage, no  judgment should be rendered against Jones and Logan, inasmuch as they have an equity against the  mortgagor, inferior and subordinate to that of the mortgagee, but still such a one as should be respected in a court of equity.  The other mortgaged property must therefore, if accessible, be first applied to  the payment of  the plaintiff's demand, and he will not be entitled to any judgment against Logan, unless it  prove to  be insufficient  for the payment of his demand.

Wherefore, the judgment is reversed, and cause remanded  for further proceedings in conformity  with this opinion.