## Webster v. Industrial Acceptance Corporation.

(Decided June 3, 1930.)

THOMAS F. YOUNG for appellant.

GEORGE G. BROCK and GEORGE A. YOUNG for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

Appellee obtained two judgments against John Herzig and F. F. Watkins, aggregating $1,985.36. The execution was issued and returned "No property found." The executions were issued on the judgments and placed in the hands of the sheriff on August 9, 1928, and they were returned on September 19, 1928. Upon the return of the execution appellee instituted a suit in equity in the nature of a bill of discovery and sought to attach in the

hands of the administrator of A. Herzig, who was the father of John Herzig, certain money to which John Herzig was entitled as one of the heirs at law of A. Herzig. At the same time an attachment was sued out and executed on the master commissioner of the Laurel circuit court, wherein it was sought to attach money or property in the hands of the master commissioner belonging to John Herzig as one of the heirs of A. Herzig. These attachments were issued on October 22, 1928, and were served soon thereafter.

The administrator reported that he had only $25 in his hands going to John Herzig from the estate of his father. The master commissioner, Mrs. Adelaide J. Johnson, filed her answer, or response, to the garnishment on the 19th day of February, 1929, wherein she reported that she had $944.07 in her hands belonging to John Herzig as one of the heirs at law of A. Herzig.

The appellant, H. M. Webster, prayed the court that he be allowed to intervene in the action. Whereupon, he filed his petition to be made a party defendant and cross-petition against John Herzig and his wife. He alleged, in his intervening petition, that on the 16th day of August, 1928, John Herzig and his wife executed and delivered to him a mortgage covering all that right and title to their interest in one certain judgment and amount coming to John Herzig as the legal heir of A. Herzig. The mortgage covered the share of John Herzig in the landed estate of A. Herzig. The land had been sold on August 13, 1928, pursuant to a judgment of the chancellor in a proceeding instituted asking for a sale. The amount of the debt which was secured by the execution of the mortgage was mentioned as $700, with interest and some other items bringing the total indebtedness of John Herzig to appellant up to $1,000.

The executions were issued and placed in the hands of the sheriff on the 9th day of August; the land was sold under a decree of the circuit court on the 13th day of August; the mortgage was executed to appellant on the 16th day of August and recorded on the 18th; the executions were returned on the 19th day of September, and the attachments were taken out on the 22d day of October. The question to be answered is: Who had the superior lien on the fund in court, if any one had a lien under the facts and circumstances shown by the record?

The chancellor found that appellant and appellee had liens of equal dignity according to the amount of

their respective claims, but he scaled down the amount of the indebtedness of John Herzig to Webster and found that the amount of that indebtedness was $967.20. He consolidated the $944.07 in the hands of the master commissioner and the $25 in the hands of the administrator and prorated the consolidated fund between appellant and appellee in the ratio that their respective debts bore to the total indebtedness, thereby allowing appellee $625.57 and appellant the remainder. Webster has appealed, complaining that the chancellor erred in not awarding him the entire fund, and appellee has obtained a cross-appeal because the chancellor did not allow it the entire fund. The funds were not sufficient to pay both claims, nor to pay either of the claims if it should be adjudged that either was entitled to the entire fund.

If the mortgage was valid and served to create a lien on the funds in the hands of the administrator and the master commissioner, and that lien was superior to any lien obtained by appellee by reason of its executions or its attachments, appellant was entitled to the entire fund. But if he obtained no lien by reason of his mortgage, or if appellee obtained a superior lien by reason of its executions and attachments, appellee should have been awarded the entire fund. The court can perceive no possible reason for splitting the fund between the two. One or the other had a superior right to the fund.

When the executions were issued they created a lien on all of the property of John Herzig subject to execution. Section 1660, Ky. Stats. This lien continued so long as the execution remained alive in the hands of the officer. The lien did not remain in force after the sheriff returned the executions, unless other executions were immediately issued and placed in the hands of the sheriff on the same day that they were returned. Hood v Winsatt, 40 Ky. (1 B. Mon.) 208; Forman v. Proctor, 48 Ky. (9 B. Mon.) 124.

In the case of Daniel v. Cochran's Administrator, 7 Ky. (4 Bibb) 532, it was held by this court, Chief Justice Boyle writing the opinion, that at common law and under the statute a fieri facias had relation to its teste and bound the goods of the defendant in the execution from that time, but that neither under the common law nor the statute would a fieri facias continue to bind the estate of the defendant in the execution after the return day.

When the mortgage was executed to appellant, if it was valid, it created a lien in favor of appellant inferior

to the lien in favor of appellee created by the issuance of the execution. When the execution was returned by the sheriff, the superior lien was terminated, and the inferior lien instanter became the superior lien, if the mortgage was valid. When the attachments were issued they created a lien on the fund which was inferior to the lien created by the mortgage, if valid.

This necessarily brings us to the question of the validity of the mortgage. It is argued by counsel for appellee that the mortgage was void under the authority of Ross et al. v. Wilson, Peter & Company, 70 Ky. (7, Bush) 34, and the subsequent cases of Loth v. Carty et al., 85 Ky. 501, 4 S. W. 314, 9 Ky. Law Rep. 131; United States Cast Iron Company v. Henry Vogt Machine Company, 182 Ky. 473, 206 S. W. 806; Moulder-Holcomb Company v. Glasgow Cooperage Company, 173 Ky. 519, 191 S. W. 275, and Cheatham v. Tennell's Assignee, 170 Ky. 429, 186 S. W. 128, L. R. A. 1917C, 1. The general rule is stated in these cases that a grant or mortgage of property to be acquired in the future is void, and that, if such a grant or mortgage can be upheld, it is only valid as a contract to assign when the property shall be acquired, and not as an assignment of a present interest.

The property in dispute here was in being at all times. When the mortgage was executed it is true that the property was represented by a bond executed to the master commissioner with a covenant to pay the purchase money. If, however, the authorities cited should be followed to the logical conclusion, they would bring us exactly to the principles announced in the case of Haydon v. Eldred, 231 Ky. 298, 21 S. W. (2d) 457, where it was held that a fund in court may be assigned to another so as to vest title in such other against attaching creditors without notice of the assignment. So it appears that, if the mortgage should be treated as being effective only as an assignment of a fund in court, it passed the title of the fund in the hands of the master commissioner to the mortgagee, if the assignment was for a good consideration and not invalid for any other reason.

It is unnecessary, however, for us to determine whether the mortgage should be treated as an assignment. The fund in court was a chose in action, and it was held, in the case of Pindell v. Grooms et all., 57 Ky. (18 B. Mon.) 501, that a mere chose, or right of action,

may be assigned or mortgaged for the indemnity of a surety, or to secure a creditor.

If the mortgage should be treated as an assignment, title to the fund passed to appellant, if the assignment was valid, and there was no fund belonging to John Herzig subject to attachment when the attachments Herzig subjece to attachment when the attachments were issued. If it be treated as a mortgage, and on its face it. appears to be a mortgage, and if it was valid, appellant had a superior lien on the fund to that created by the attachments, and in either event he was entitled to the entire fund, or to so much of it as would satisfy his valid indebtedness as expressed in the instrument.

The mortgage was placed on record within two days after its execution and was thereafter notice to all creditors.

It is argued by appellee that the mortgage was fraudulent and was executed without consideration, or for the purpose of cheating, delaying, or hindering creditors, and that it was therefore void. The answer of appellee to the intervening petition of appellant contains a traverse and a second paragraph in which it is alleged that, if the mortgage was executed, "the same was done fraudulently and with a fraudulent intent to defeat this plaintiff in the collection of its debt herein; and plaintiff says that the said H. M. Webster and John Herzig and Anna E. Herzig were fraudulently conspiring together in the preparation and the execution of said mortgage with the fraudulent intent to defeat this plaintiff in the collection of its debt herein and that said mortgage, if any such there was, was not given in good faith or for a valuable consideration."

Treating the plea as sufficient, whether it is or not, we will examine the testimony in the record to ascertain whether it supports the plea. Appellant testified that he held a note for $768 which had been executed to him for cash, and that he had an open account on his books against Herzig which amounted to about $250, and that there was a further sum of $60 which he had loaned to the partnership of Watkins & Herzig, and that he and Herzig agreed that the amounts, including interest, aggregated about $1,100. The mortgage was executed to secure these debts, according to the testimony of appellant. Appellant was in no way related to Herzig or Watkins, and, according to his evidence, he had advanced

618

the money to them to aid them in the conduct of their business. He learned in same way that Herzig had sold a mill for $3,500 and had applied the proceeds on the payment of some of his debts and he had failed to pay him anything. Consequently, he went to him to ascertain why he had not been paid, and, as a result of his conversation, the mortgage was executed. The testimony of John Herzig corroborates appellant. There appears to be no proof in the record even raising a suspicion that the testimony of appellant and Herzig is untrue. It was not contradicted. No witness attempted to testify to any fact that would give rise to a conclusion that the execution of the mortgage was other than a bona fide transaction between the parties.

The judgment is affirmed on the cross-appeal, and reversed on the original appeal, and remanded for proceedings consistent with this opinion.