**SOUTH BAY ENTERPRISES, INC., Appellant,**

v.

**MIRADA BAY PETROLEUM, INC. and Ahmed Al–Yazdi, Appellees.**

No. 96–CA–2509–MR.

Court of Appeals of Kentucky.

Oct. 10, 1997.

William P. Thurman, Lexington, for Appellant.

Stanton L. Cave, Lexington, for Appellee, Ahmed Al–Yazdi.

Before GUIDUGLI, JOHNSON and SCHRODER, JJ.

*OPINION*

SCHRODER, Judge.

Appellant, South Bay Enterprises, Inc. (South Bay), appeals from an August 13, 1996 order and judgment of the Fayette Circuit Court, finding South Bay's default judgment and accompanying writ of execution against appellee, Mirada Bay Petroleum, Inc. (Mirada), subordinate to Ahmed Al–Yazdi's (Al–Yazdi) claim for royalties arising from a September 10, 1990 royalty agreement with Mirada. We affirm.

South Bay was the largest stockholder of Mirada. Mirada was in dire financial straits, and records from Board of Director meetings evince that in May 1991, the board resolved to repay loans from South Bay as soon as

possible. Royalties were due to both Al-Yazdi and South Bay pursuant to a September 10, 1990 Royalty Agreement.[1] Al-Yazdi refused to subordinate his right to royalties to South Bay's right to have its loans repaid, and vice versa. Between April and November 1994, Mirada received loans amounting to $141,000 from South Bay to cover day-to-day operating expenses yet was unable to repay the loans. On March 8, 1995, South Bay was granted a default judgment against Mirada for $347,000 plus interest. South Bay also filed a petition for dissolution pursuant to KRS 271B.14–300, seeking dissolution of Mirada and application of proceeds toward payment of its default judgment. On March 21, 1995, South Bay delivered a writ of execution to the Fayette County Sheriff to attach or levy Mirada property in satisfaction of the debt. The writ was returned, "NO PROPERTY FOUND TO SATISFY THIS FI FS" on April 4, 1995. In fact, Mirada owns no real property.

The Fayette Circuit Court issued a decree and order on June 21, 1995, dissolving Mirada and appointing a receiver to sell corporate assets. Mirada was ordered to first pay the receiver, then any outstanding bills owed to suppliers of goods or services, and then the $347,000 plus interest to South Bay. Thereafter, the court ordered Mirada to provide an accounting of its financial condition, and a hearing was set for June 17, 1996, to determine whether Al-Yazdi was a creditor of Mirada.

On June 28, 1996, the court found that Al-Yazdi had an unperfected security interest pursuant to the royalty agreement of September 10, 1990. Accordingly, the court issued an order and judgment concerning the relative priority of Al-Yazdi's lien and South Bay's default judgment in Mirada's assets, on August 13, 1996. In comparing the unperfected lien of Al-Yazdi with the default judgment of South Bay, the court ruled that South Bay lost its status as a lien creditor when the writ of execution was returned "no property found." As such, the court found South Bay's claim to be subordinate to Al-Yazdi's unperfected security interest. Thus, the order of dissolution was amended so that Mirada was ordered to first pay the receiver, then Al-Yazdi and South Bay $37,000 each pursuant to the royalty agreement, and then South Bay pursuant to the default judgment. South Bay now appeals.

South Bay makes three arguments: 1) that pursuant to KRS 355.9–301(1)(b), its status as a lien creditor commenced when the writ of execution was issued and should have continued until its judgment against Mirada was satisfied or the time to enforce the judgment ran out; 2) that proceeding under KRS 271B.14–300, as a judgment creditor, gave it the same status as a lien creditor under KRS 355.9–301(1)(b); and 3) that it was entitled to an evidentiary hearing to determine whether the royalty agreement was orally modified to delay further royalty payments to Al-Yazdi until Mirada's debt to South Bay was paid.

KRS 355.9–301 governs the rights of lien creditors as against unperfected secured parties competing for collateral. KRS 355.9–301(1) states, in pertinent part:

> Except as otherwise provided in subsection (2) of this section, an unperfected security interest is subordinate to the rights of:
>
> . . . .
>
> (b) A person who becomes a lien creditor before the security interest is perfected.

KRS 355.9–301(3) defines a "lien creditor" as:

> a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

■ In D. Leibson & R. Nowka, *The Uniform Commercial Code of Kentucky,* § 10.4(B)(1) (2d ed.1992), the authors explain that "[A] person who becomes a lien creditor before a security interest is perfected will defeat the security interest even if the lien creditor has knowledge of the security inter-

---

1. Al-Yazdi was responsible for creating a product known as Yaz–Dx, a cleaning solvent in the oil well industry. Pursuant to the royalty agreement, he would receive monthly royalty payments based on Mirada's gross revenues.

est."[2]  Therefore, if appellant was a lien creditor, it should have priority over Al-Yazdi, since he had an unperfected security interest.  Regarding appellant's status, Leibson and Nowka expound that lien creditors include:

> persons who have unsatisfied judgments against the debtor and who direct the sheriff to levy the execution on property of the debtor.  When the execution is delivered to the sheriff for levy, the creditor becomes a lien creditor.

*Id.* This certainly describes appellant.  However, by the very definition found at KRS 355.9–301(1)(b), the creditor must acquire a lien by "attachment, levy or the like."  No Mirada property was ever attached or levied, and the writ was returned "no property found" on April 4, 1995.  This is consistent with *Fannin's Ex'r v. Haney,* 283 Ky. 68, 140 S.W.2d 630, 632 (1940), wherein our highest Court interpreted the cases of *C.T.C. Investment Co. v. Daniel Boone Coal Corp.,* 58 F.2d 305 (E.D.Ky.1931) and *Webster v. Industrial Acceptance Corp.,* 234 Ky. 613, 28 S.W.2d 959 (1930) as holding that "if an execution is returned 'no property found' or without an actual valid levy upon the property, the lien created by issuing the execution and placing it in the hands of an officer is released."  Leibson and Nowka acknowledge this interpretation.

Appellant urges us, however, to adopt the comment made in a footnote by Leibson and Nowka that:

> the definition should not be so narrowly interpreted.  If a state law such as KRS 426.120 makes a person a lien creditor before the levy, such a person should be considered a lien creditor for § 9–301 priority purposes.

Leibson & Nowka, *supra* at n. 508.  Although we find the invitation persuasive, we decline based on established case law.

In *Webster, supra,* our highest Court held that a lien is created on all property subject to execution and continues so long as it remains alive in the hands of the sheriff.  *See*

also *McKenzie v. Commonwealth for Use and Benefit of Hicks,* Ky., 373 S.W.2d 595 (1963).  "The lien did not remain in force after the sheriff returned the executions, unless other executions were immediately issued and placed in the hands of the sheriff on the same day that they were returned."  *Webster,* 28 S.W.2d at 960.  It is no longer binding after the return date.  Based on this case, we believe that if South Bay had delivered another writ of execution to the sheriff immediately after the original writ was returned, it would have maintained its status as a lien creditor.  In fact, South Bay could have had a succession of writs of execution delivered until Mirada property was found for attachment.  But because no action was taken after the writ was returned "no property found," we agree with the circuit court that South Bay lost its lien creditor status when the writ was returned.

This holding is also supported by *In re Baird,* 55 B.R. 316 (Bankr.W.D.Ky.1985), in which it was held that a judicial lien is unperfected unless a valid levy is made against the property of the debtor, and *In re Wilson,* 38 B.R. 940, (Bankr.W.D.Ky.1984), in which the Court ruled that a lien is not perfected unless the sheriff makes a proper levy.

Because of the Kentucky cases which support our affirming the decision below, we decline to look to extrajurisdictional case law, as espoused by appellant, for guidance on this matter.  Any policy arguments in favor of altering Kentucky law should be addressed to the Supreme Court.

Appellant's second contention is that the proceeding for dissolution under KRS 271B.13–300 gave it the same status as a lien creditor under KRS 355.9–301(1)(b).  We find no authority for this proposition.  Appellant was a general creditor unless it can point to statutory authority to the contrary.  We find nothing in the statute which elevates the status of some creditors over others.  Nor do we find persuasive appellant's assertion that KRS 271B.13–300 is the corporate equivalent to KRS 426.381.  As pointed out by Al-

---

**2.**  This is consistent with the legislative change made to KRS 355.9–301(1)(b), which became effective July 1, 1987.  It eliminated the requirement that a lien creditor not have knowledge of an unperfected security interest in order to take priority over the holder of the unperfected security interest.

Yazdi, KRS 426.381 was a readily available course which appellant could have followed but did not.

◼ Finally, appellant maintains that it was entitled to an evidentiary hearing to determine whether the royalty agreement was orally modified to delay further royalty payments until Mirada's debt to South Bay was paid. The record shows that a hearing was held on June 17, 1996, and thereafter, the court found that any modification was merely an agreement to forbear bringing an action to collect royalties, not an agreement that the indebtedness due South Bay had priority over payment of the royalties. The court considered documentary evidence bearing on the issue, including Board of Director meeting minutes, a resolution of the Board of Directors, letters from interested parties, the royalty agreement, and a memorandum summarizing Al–Yazdi's desire not to subordinate his claim to appellant's. Appellant argues, however, that the nature of the modification presented a question of fact, and the testimony of live witnesses was crucial to the ultimate determination. Scrutiny of the entire record fails to show that appellant ever raised this concern at the trial level. Accordingly, the issue is deemed waived, and we decline to address it. *See St. Ledger v. Com., Revenue Cabinet,* Ky., 942 S.W.2d 893 (1997).

Accordingly, we affirm the decision of the Fayette Circuit Court.

GUIDUGLI, J., concurs.

JOHNSON, J., concurs in result only and files separate opinion.

JOHNSON, Judge, concurring in result.

I concur in the result reached by the Majority Opinion, but choose to distance myself from the language in the Opinion on pages 5 and 6 concerning the persuasiveness of the comment by Leibson and Nowka and the comment on page 7 concerning our Supreme Court altering Kentucky law. I agree with the statement by the appellee, Al–Yazdi, that Leibson and Nowka's comment relates to when a judgment creditor's lien should be considered effective if an attachment or levy is made. Any changes in KRS 355.9–301(3)

are clearly within the province of the Legislature and not the courts.