# United States Court of Appeals
## For the First Circuit

———————————

No. 04-1950

JAMES C. CALLAHAN; FRANCIS DIMENTO; RITA DIMENTO; HENRY D. VARA,

Claimants, Appellants,

———————————

UNITED STATES,

Plaintiff,

v.

MONETA CAPITAL CORPORATION,

Defendant, Appellee,

———————————

No. 04-1951

NANCY TROY LOVETT, THE NANCY TROY LOVETT SELF-DIRECTED
INDIVIDUAL RETIREMENT ACCOUNT, RAUL L. LOVETT MARITAL TRUST,

Claimants, Appellants,

———————————

UNITED STATES,

Plaintiff,

v.

MONETA CAPITAL CORPORATION,

Defendant, Appellee.

———————————

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, <u>Senior U.S. District Judge</u>]

————————————

Before

Lipez, <u>Circuit Judge</u>,
Stahl, <u>Senior Circuit Judge</u>,
and Oberdorfer, <u>Senior District Judge</u>.*

————————————

<u>Robert K. Taylor</u>, with whom <u>Jeffrey H. Gladstone</u> and <u>Partridge Snow & Hahn LLP</u> were on brief, for appellant Lovett, et al.
<u>Kevin D. Heitke</u>, with whom <u>Law Office of Kevin D. Heitke</u> was on brief, for appellant Callahan, et al.
<u>Arlene M. Embrey</u>, Attorney, Office of General Counsel, U.S. Small Business Administration, with whom <u>Thomas E. Carlotto</u> and <u>Shechtman Halperin Savage, LLP</u> were on brief, for appellee.

————————————

June 29, 2005

————————————

_____
*Of the District of Columbia, sitting by designation.

**STAHL**, **Senior Circuit Judge**. This case consists of two consolidated appeals arising from a receivership proceeding initiated by the United States Small Business Administration ("SBA") against Moneta Capital Corporation ("Moneta"), a small business investment corporation established in 1984. Appellants Nancy Troy Lovett, the Nancy Troy Lovett Individual Retirement Account, and the Raul L. Lovett Marital Trust (the "Lovett Appellants") appeal from a district court order rejecting their objection to the final disposition of claims against the receivership based on lack of standing. Appellants James C. Callahan, Francis DiMento, Rita DiMento, and Henry D. Vara (the "Callahan Appellants") appeal from a district court order denying their request for leave to either amend their existing claim or to file a claim out of time, and denying their motion to reconsider. Finding no error in the district court's decisions, we affirm.

## I.

We begin with a recitation of the facts as they relate to all appellants. On or about November 15, 1999, the SBA filed a complaint for receivership in the United States District Court for the District of Rhode Island against Moneta. The complaint alleged that Moneta had failed to repay SBA debentures and had violated certain SBA regulations regarding the transfer of assets.[1] The

---

[1]Specifically, it was alleged that Moneta has violated the Small Business Investment Act of 1958, 15 U.S.C. § 687, and the regulations promulgated thereunder at 13 C.F.R. § 107.1 et. seq.

complaint also sought injunctive relief to prevent further dispositions of Moneta's assets in violation of SBA regulations.

Pursuant to the Small Business Investment Act of 1958, the district court took exclusive jurisdiction of Moneta and all of its assets and appointed the SBA as receiver ("Moneta Receiver") for the "purposes of administering and liquidating all of Moneta's assets and satisfying the claims of creditors therefrom in the order of priority as determined by this Court." The District Court then entered an order establishing a "claims bar date process" by which creditors were given notice ("Notice to Creditors") to present their claims to the Moneta Receiver by a certain date ("Claims Bar Date"), or their claims would be barred.

Pursuant to court order, the Moneta Receiver sent the Notice to Creditors on April 19, 2001. The notice gave the Claims Bar Date as May 23, 2001, and stated that any written claims against Moneta or the Moneta Receiver had to be filed by that date. Notice was also published in the Providence Journal and the St. Croix Avis on April 16 and April 23, 2001. The Claims Bar Date was extended by court order twice, with a final Claims Bar Date of August 23, 2001.

On December 1, 2003, the Moneta Receiver filed a motion, memorandum and report in support of its recommendations for the disposition of each claim received. The district court granted the Moneta Receiver's motion on December 19, 2003, and issued an order

-4-

accepting the Moneta Receiver's recommended disposition of the claims ("Claims Disposition Order"). The Claims Disposition Order provided that any claimant failing to object to the recommended disposition within thirty days would be permanently barred from asserting claims against Moneta.

## II.

### A.   **Arnold Kilberg and the Kilberg Entities**

Arnold Kilberg was Moneta's principal prior to the establishment of the Moneta Receivership. Beginning in January 2002 (after the Claims Bar Date for the Moneta Receivership had passed), the state and federal courts in Rhode Island issued a series of orders and judgments finding that Kilberg and certain of his entities had disregarded the corporate structure by utilizing a common treasury and thus were deemed alter egos of one another. The entities found to be using a common treasury included Acropolis Enterprises, Inc., Pantheon Enterprises, Inc., Governor Financial, LLC, Hamlet Properties, LLC, London Exchange, Arnold Kilberg & Co., Northeast Capital Corporation, and Rosedale Properties, LLC (collectively, the "Kilberg Entities"). Moneta was not included in the list of entities deemed alter egos.

### B.   **The Lovett Appellants and the Fairway Receivership**

Another entity controlled by Kilberg, the Fairway Capital Corporation ("Fairway"), was also in receivership at the United States District Court for the District of Rhode Island, with the

SBA appointed as receiver ("Fairway Receiver"). In December 2003, the Fairway Receiver filed a motion requesting that it be allowed to participate in civil proceedings against Kilberg and/or the Kilberg Entities. The motion claimed that there had been improper transfers of assets by Kilberg from Fairway to the Kilberg Entities. The Fairway Receiver also moved for partial consolidation of the Fairway receivership estate because Fairway owned two of the Kilberg Entities that had been deemed alter egos of Kilberg, Acropolis and Pantheon. The records used in support of the consolidation motion revealed transfers of funds between Acropolis and the other Kilberg Entities, between Acropolis and Fairway, and between Acropolis and Moneta.

On January 8, 2004, the District Court issued an order granting the Fairway Receiver's consolidation motion ("Consolidation Order"). The Consolidation Order included a finding that "Fairway is the true owner of [Acropolis] and [Pantheon]" and that "Acropolis and Pantheon were alter egos of Fairway up to March 13, 2000." The Consolidation Order also authorized the Fairway Receiver to establish a supplemental claims procedure to allow creditors of Acropolis and Pantheon to make claims against the Fairway Receivership estate.

In a separate order, the district court found with regards to the Fairway Receivership that the remainder of the Kilberg Entities not addressed in the Consolidation Order were also

alter egos of Kilberg and of each other, and that "the Fairway Receiver may seek recovery from each of them on any valid claims it has against any one of them, or against Arnold Kilberg." Even though there was some indication that Moneta was involved in suspicious transfers with the Kilberg Entities, at no time was Moneta adjudicated an alter ego of the Kilberg Entities or of Fairway.

Suspecting that Moneta was indeed an alter ego of Fairway and/or the Kilberg Entities, the Lovett Appellants, all creditors of Fairway, sought to assert a claim against Moneta. Instead, however, of going through the process of trying to file a late claim with the Moneta Receiver, or requesting leave from the District Court to file a late claim, the Lovett Appellants chose to file an objection to the Moneta Claims Distribution Order. The district court dismissed the Lovett Appellants' objection to the Claims Disposition Order for lack of standing, stating that "it is clear that the Lovett entities had not complied with the bar date as to Moneta; and, therefore, there's no claim pending, and there's nothing for the Lovett entities to object to."

The Lovett Appellants timely appealed and now present us with two arguments: first, they argue that they have standing to object to the Claims Disposition Order; and second, that the notice provided by the Moneta Receiver was insufficient. We address each argument in turn.

-7-

1.        Standing of the Lovett Appellants

"Article III of the Constitution confines the federal courts to deciding actual cases and controversies." Cotter v. City of Boston, 323 F.3d 160, 166 (1st Cir. 2003). Part of this requirement is that a plaintiff must have standing, that is, he must establish that "(1) he or she personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court." N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996). We review the district court's decision on standing de novo, "crediting the plaintiff's factual allegations to the extent that they are material and construing those alleged facts, together with the reasonable inferences therefrom, in favor of the plaintiff." Id. at 12.

The "challenged conduct" at issue in this case is the disposition of the claims against the Moneta Receivership, as presented by the Moneta Receiver, and approved by the district court in the Claims Disposition Order. The Claims Disposition Order invited anyone who had claims being adjudicated by the order and was dissatisfied with the recommended disposition to object within thirty days of the order; otherwise, the disposition of the Moneta Receivership estate as to those claims would become final.

The Lovett Appellants did not make a claim to the Moneta Receiver prior to the Claims Bar Date, and therefore, they do not have standing to object to the adjudication of a pending claim in the Claims Disposition Order. Moreover, even though the Lovett Appellants may have not known prior to the Claims Bar Date that they possibly had a claim against the Moneta Receiver due to the complex nature of Fairway and Moneta's involvement with the Kilberg Entities, once such evidence began to surface, they did not attempt to file a late claim with the Moneta Receiver. And, with the newly-acquired evidence that they might have a claim against Moneta, the Lovett Appellants could have asked the district court directly to allow their late claim by presenting their theory that Moneta is an alter ego of the Kilberg Entities as its reasonable excuse for delay. See 3 Ralph E. Clark, A Treatise on the Law and Practice of Receivers § 652 (3d ed. 1959) ("If a reasonable excuse for delaying to make an earlier claim is shown, the creditor will be admitted at any time before actual distribution, or even after partial payment, if there be a surplus in the hands of the receivers, so as not to interfere with payments already made."). What they could not do was file an objection to the Claims Disposition Order without having a claim that would be affected by that Order. See Claims Disposition Order (stating that "any claimant who opposes the Receiver's recommended disposition of its claim" must file a motion within thirty days) (emphasis added).

Such a claim is essential because it "submits [the claimant] to the court's jurisdiction in respect of all defenses that might be made by the receivers, and of all objections that other claimants might interpose to the validity, amount, or priorities of their claim, and the claimant puts himself in a position, should his interest warrant, to challenge the receiver's acts and demands of other claimants or creditors."  Clark, supra, § 626.  And, despite the Lovett Appellants' contention, there is nothing in their objection to the Claims Disposition Order that can be construed as a motion for leave to file a late claim with the Moneta Receiver.  The district court was correct to dismiss the Lovett Appellants' objection to the Claims Disposition Order for lack of standing.

2.      Improper Notice

The Lovett Appellants next contend that the Moneta Notice to Creditors did not provide them with fair and reasonable notice and an opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  They argue that this is so because the Notice to Creditors "did not alert claimants to the relationship between Moneta and certain Kilberg entities . . . so as to afford them a reasonable opportunity to submit claims against Moneta based on the conduct of those entities."  This, however, is an argument that the Lovett Appellants must make to the district court in their request to file a late claim as evidence of their "reasonable excuse for

delay[]."  The District Court correctly dismissed the Lovett Appellants' objection.

**C.**        **The Callahan Appellants and C.R. Amusements, Inc.**

We next turn to the claims of the Callahan Appellants. The Callahan Appellants are the minority shareholders of C.R. Amusements, LLC, an entity of which Moneta was the majority shareholder.  C.R. Amusements filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Rhode Island on January 14, 1999.  As part of the bankruptcy proceedings, the Callahan Appellants, as minority shareholders of C.R. Amusements, intervened in an adversarial proceeding between Acropolis (successor-in-interest to Moneta as majority shareholder) and C.R. Amusements in the bankruptcy court ("Acropolis Proceeding"), seeking to equitably subordinate the security interest of Acropolis in certain assets of C.R. Amusements.  See Acropolis Enters. v. C.R. Amusements (In re C.R. Amusements), 259 B.R. 523 (Bankr. D.R.I. 2001).  The Callahan Appellants lost their subordination request and appealed to the United States District Court for the District of Rhode Island.  While the appeal was pending, the Callahan Appellants received the Notice to Creditors from the Moneta Receiver, and filed a claim with the Moneta Receiver that stated "[t]he claims asserted are the same claims as set forth in the [Acropolis Proceeding]," and incorporated by reference the arguments and filings made by the Callahan Appellants

in that proceeding. After the claim was filed, the Callahan Appellants withdrew their appeal of the adverse decision in the Acropolis Proceeding to the District Court, and the judgment of the bankruptcy court became final. Even though, by their own assertion to the Moneta Receiver, their claims against Moneta were based on the same claims asserted in the Acropolis Proceeding, and those claims had been finally adjudicated against them, the Callahan Appellants did not at this time request leave to file a new claim or to amend its existing claim with the Moneta Receiver.

When the Moneta Receiver eventually filed its recommendations for the disposition of the claims against the Moneta Receivership estate (more than two years after the decision in the Acropolis Proceeding became final), it recommended that the claim filed by the Callahan Appellants be denied. The Moneta Receiver supported this denial on the basis that "[t]hese issues and claims were finally and conclusively decided in Moneta's favor in [the Acropolis Proceeding]," and that "[c]laimants are therefore estopped from raising these issues." The District Court approved this recommendation in its Claims Disposition Order. The Callahan Appellants filed a timely objection to the Claims Disposition Order, stating that there were only two issues addressed in the Acropolis Proceeding, and that "[c]laimants' claim [with the Moneta Receiver] extends beyond a subrogation claim against Moneta relative to a loan made to CR Amusements," and requesting leave to

-12-

either amend or otherwise supplement their claim. The Callahan Appellants provided no explanation or legal justification in their memorandum of law in support of the objection to the Claims Disposition Order, beyond the statement that "[w]ith [the district court's] proposed denial of various participation interests as set forth in the Receiver's recommendations, uncertainty exists as to Claimants' rights or the Creditors of CR Investments as to returns on their minority interest."

On May 27, 2004, the District Court conducted a hearing on pending objections to the Claims Disposition Order. The Callahan Appellants did not attend the hearing (they claim there was a mixup with their attorney) and the District Court denied their objection on the grounds that their claim was res judicata and that the Callahan Appellants were time-barred from filing any new claims. The Callahan Appellants filed a Motion for Reconsideration requesting a new hearing on their objection. In support of their request for a new hearing, the Callahan Appellants simply stated that there "existed valid and plausible" objections to the Claims Disposition Order. The Callahan Appellants did not explain why they had not requested leave to amend their claim to the Moneta Receiver prior to the claim's denial, and what exactly had changed to convert their denied claim into a viable claim. The District Court denied the Motion for Reconsideration, and the Callahan Appellants filed this timely appeal.

-13-

On appeal, the Callahan Appellants argue that it was it was an abuse of discretion for the District Court to deny their objection, essentially identifying the error as the court's refusal to allow them to amend their original claim or to file a new claim. The Callahan Appellants do not contend that the District Court erred in denying the claim as originally submitted; that is, on the basis that the claim against the Moneta Receiver was <u>res judicata</u>. Thus, we deem the argument that it was error for the district court to deny the original claim on the basis of <u>res judicata</u> as waived. <u>See, e.g.</u>, <u>Smilow</u> v. <u>Southwestern Bell Mobile Sys., Inc.</u>, 323 F.3d 32, 43 (1st Cir. 2003) ("Issues raised on appeal in a perfunctory manner (or not at all) are waived.").

Moving to whether the district court erred in denying the Callahan Appellants request for leave to either amend its existing claim or to file a late claim, we note that a District Court acting as a receivership court has broad discretion in determining whether to permit a claimant to file a late claim or to amend a timely filed claim. <u>See</u> Clark, <u>supra</u>, § 652. We thus review the district court's denial of the Callahan Appellants' request to either amend its existing claim or to file a late claim for abuse of discretion. <u>Id.</u> ("[T]he court's discretion refusing to allow claims to be filed afterward will not be set aside on review unless plainly wrong.").

In their objection to the Claims Disposition Order, the Callahan Appellants provided no explanation, nor legal justification, for their request to amend their existing claim or to file a late claim. They simply made a conclusory statement that the factual circumstances had changed during the time between their original filing of the claim and the district court's denial of their claim. In addition, the Callahan Appellants provided no explanation why they waited until after the claim had been denied to request leave to amend their claim. This is particularly confusing considering that they must have known that factual circumstances had changed at the time they withdrew the appeal of the adverse decision in the Acropolis Proceeding. Furthermore, the Callahan Appellants had an opportunity to argue their case when the district court held a hearing on their objection to the Claims Disposition Order. It was not an abuse of discretion for the District Court to deny the Callahan Appellants' objection to the Claims Disposition Order.

The Callahan Appellants had yet another opportunity to present the factual and legal circumstances supporting their request to either amend their existing claim or to file a new claim out of time when they moved for reconsideration of the denial of their objection to the Claims Disposition Order. We review the district court's denial of the motion for reconsideration for abuse of discretion. See Douglas v. York County, 360 F.3d 286, 290 (1st

-15-

Cir. 2004). Once again, the Callahan Appellants presented no cognizable justification for their request for leave to amend their existing claim or to file a late claim, and the district court properly denied their motion for reconsideration.

### III.

For the above-mentioned reasons, the district court's denial of both the Lovett Appellants' and the Callahan Appellants' objections to the Claims Disposition Order, and the denial of the Callahan Appellants' motion to reconsider the denial of their objection, is **AFFIRMED.**