**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0161n.06

**No. 08-6447**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| *Plaintiff*, | ) | **FILED** |
| | ) | **Mar 15, 2010** |
| v. | ) | LEONARD GREEN, Clerk |
| | ) | |
| **CAPITAL ACROSS AMERICA, L.P.**, | ) | |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **U.S. SMALL BUSINESS ADMINISTRATION**, | ) | ON APPEAL FROM THE |
| as receiver of Capital Across America, L.P., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| *Defendant-Appellee*, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| **PRISCILLA BATES**, | ) | |
| | ) | |
| *Intervenor-Appellant*. | ) | |
| | ) | |

**BEFORE:**     **MARTIN, BOGGS, and COLE, Circuit Judges.**

**COLE, Circuit Judge.**  This appeal arises out of a receivership action brought by the U.S.

Small Business Administration against Capital Across America, L.P., which formerly operated as

a federally licensed small business investment company.  Capital Across America is now held in

receivership by the Small Business Administration, which is in the process of liquidating the

company's assets and terminating its operations. Intervenor-Appellant Priscilla Bates submitted a claim through the receivership claims process, which the district court denied. The district court then dismissed Bates's objection to that denial. Bates now appeals the district court's order. For the following reasons, we **VACATE** the district court's denial of Bates's claim and **REMAND** for further proceedings.

## I. BACKGROUND

### A. Relationship Between CAA, Metro Meter, and Bates

Capital Across America, L.P. ("CAA") was licensed by the Small Business Administration ("SBA" or "Receiver") as a small business investment company ("SBIC") under 15 U.S.C. § 681(c).[1] As an SBIC, CAA received over $14 million in financing from the SBA to invest in small businesses. In 1999, CAA and another SBIC, CapSource Fund, L.P. ("CapSource"), invested in Metro Meter Service, Inc. ("Metro Meter"). CAA and CapSource loaned Metro Meter money and took a security interest in substantially all of Metro Meter's assets, which CAA promptly perfected. Bates and her husband are former proprietors and employees of Metro Meter who surrendered their interests in the company as part of a comprehensive settlement agreement between them, Metro Meter, CAA, and CapSource, executed in 2002. As part of that agreement, Bates granted her shares of Metro Meter stock to CAA and CapSource, and Metro Meter agreed to pay Bates $120,000 in three annual installments, pursuant to a promissory note.

### B. Receivership's Initial Stages

---

[1] For background on SBICs and the regulatory framework within which they operate, see *United States v. Fidelity Capital Corp.*, 920 F.2d 827, 829-31 (11th Cir. 1991).

On April 18, 2006, the SBA sued CAA for being capitally impaired in violation of SBIC regulations and requested to be appointed the company's receiver under 15 U.S.C. § 687c in order to liquidate its assets and satisfy its creditors' claims. On May 1, 2006, the district court entered a consent order appointing the SBA as receiver, taking exclusive jurisdiction over CAA and its assets, and staying all civil legal proceedings involving CAA or its assets, including Metro Meter.

On November 20, 2006, Bates filed a motion to intervene, claiming an interest in Metro Meter. Attached to Bates's motion was a proposed complaint alleging that Metro Meter, at the direction of CAA and CapSource, had not paid her the $120,000 she was owed and that Metro Meter was operating as an alter ego of CAA and/or CapSource. The Receiver responded in opposition to Bates's motion, arguing that Bates's claims should be resolved in the receivership claims process to be established by the court, and that she was not entitled to intervene or have the judicial stay lifted. Moreover, the Receiver argued that Bates's underlying claim would fail on the merits because CAA's previously perfected security interest in Metro Meter's assets had priority over Bates's claim against Metro Meter. On January 11, 2007, the court denied Bates's motion without prejudice, recommending that she submit her claim through the receivership claims process in order to give the Receiver an opportunity to evaluate her claim and, if unsuccessful, allowing her to renew her claim once that process was exhausted.

## C. Claims Process

On March 2, 2007, the district court issued an order establishing a process for the filing of claims against CAA. The court required claimants to submit claims directly to the Receiver and to state in writing: (1) the full name and address and telephone number of the claimant;

> (2) the amount of the claim; (3) the specific grounds for each claim; and (4) the date on which the obligation was allegedly incurred by CAA; and (5) to provide at the time of filing such written claims any and all documents or other materials which the claimant believes supports the claim or might assist the Receiver in evaluating the claim.

(District Court Record Entry ("R.E.") 33 ¶ 6.) Further, for any claims that the Receiver recommended for denial, the Receiver was "authorized and directed to move for summary disposition of said claim(s)," the claimants would be allowed to respond, and the court would resolve the claims "expeditiously through a summary procedure that the Court will determine at that time." (*Id.* ¶ 7.) Subsequently, a claims bar date was set as June 18, 2007.

Bates, through counsel, submitted a number of documents to the Receiver on May 18, 2007. The set of documents consisted of: (1) a letter from Bates's counsel; (2) a copy of a judgment from Daviess Circuit Court (Kentucky) for $143,468.52 (including $23,468.52 in interest) entered for Bates against Metro Meter on July 3, 2006; (3) a copy of the promissory note from Metro Meter to Bates; and (4) a copy of the underlying settlement agreement. The letter from Bates's attorney stated in full:

> I am an attorney representing Priscilla Bates in litigation against Metro Meter Service, Inc. She received a judgment against Metro Meter Service, Inc. which is attached as Exhibit A. This judgment arose from a note (Exhibit B) issued to Mrs. Bates as part of a litigation settlement Capital Across America, LP was a party [sic] (Exhibit C).
>
> If you require additional information, please feel free to contact me.

(R.E. 37, Attachment #7, at 3.)

On November 14, 2007, the Receiver sent Bates's counsel a letter asking Bates to submit any

additional documents supporting her claim.[2] On December 3, 2007, Bates's attorney responded with

a letter arguing that Bates could assert her claim directly against CAA because CAA was a party to

the settlement agreement and because she could pierce Metro Meter's corporate veil.[3] In support of

this argument, Bates submitted to the Receiver purported internal financial documents from Metro

Meter from 2004 and 2005 that she claimed showed that CAA no longer held a security interest in

the assets of Metro Meter. Based on these documents, she argued that her claim against Metro Meter

had priority over CAA's interest in the assets of Metro Meter because CAA's security interest had

been converted into equity, such that CAA was now only a Metro Meter shareholder and not a

secured creditor of Metro Meter.

## D. Denial of Bates's Claim

On June 25, 2008, the Receiver submitted its recommendation to the court as to the

disposition of each claim. The Receiver recommended denial of Bates's claim because it did not

conform with the court's claims requirements and because she had not established that she was a

creditor of CAA (as opposed to Metro Meter). Further, the Receiver argued that, under Kentucky

law, CAA's interest in Metro Meter had priority over Bates's claim against Metro Meter because it

was a secured interest in substantially all of Metro Meter's assets that was properly perfected before

---

[2]Although the claims bar date already had passed by this time, the Receiver asserts that if Bates had submitted compelling evidence of a valid claim and provided a reasonable basis for not submitting the evidence earlier, the Receiver may have recommended to the district court allowance of her claim despite its submission after the deadline.

[3]On appeal, Bates has abandoned the argument that she has a direct claim against CAA, and instead only argues that she has a claim against Metro Meter.

Bates's claim against Metro Meter even arose.

On June 26, 2008, the court adopted the Receiver's proposed order, rejecting Bates's claim without analysis. The court also established the procedures, recommended by the Receiver, for claimants to challenge the denial of their claims. Any such claimant was required to "file a Motion objecting to the Receiver's recommended disposition of its claim, together with a Memorandum in support of its Motion setting forth the specific factual and legal grounds on which it objects to the Receiver's recommended disposition, and a proposed Order." (R.E. 39 ¶ 7.) Claims denied and not challenged according to these procedures were, by the terms of the court's order, "forever barred and deemed to be null and void" and denied claimants were "permanently enjoined from asserting, pursuing or prosecuting any such claim against CAA, its Receiver, their successors or assigns, or against assets or funds in the possession of the Receiver." (*Id.*)

On July 28, 2008, Bates filed with the district court a two-page document styled as an "objection" to the denial of her claim. Bates argued that (1) CAA's security interest in Metro Meter had been converted to a capital investment (and that her claim therefore had priority), and (2) she should be allowed to pierce Metro Meter's corporate veil to pursue her claims directly against CAA. In support of her first claim, Bates attached the purported internal Metro Meter financial statements that did not show any secured debts held by CAA.[4] Bates requested that the court either grant her

---

[4]On nearly every page of these documents appears one of the following phrases: "Unaudited - For Management Purposes Only," "Unaudited - For Internal Use Only," or simply "For Management Purposes Only." (R.E. 41, Attachment #1.) This raises serious doubts about their admissibility and whether, if they are admissible, they should be afforded any weight. Additionally, the Receiver has offered sufficient evidence showing that CAA still maintains a perfected security interest in Metro Meter's assets.

claims against CAA and Metro Meter or, alternatively, lift the stay "to permit adjudication of lien priorities against Metro Meter." (R.E. 41, at 2.) On August 26, 2008, the Receiver responded in opposition to Bates's objection, noting that Bates's objection did not conform with the court's requirements and refuting her various arguments. On September 17, 2008, the court overruled Bates's objection "for lack of proof that . . . Bates is a creditor of CAA entitled to relief." (R.E. 43.) Bates appeals from that order.

The district court had jurisdiction over the suit brought by the SBA under 15 U.S.C. § 687c. This court has jurisdiction over Bates's appeal from the district court's final order denying Bates's objection under 28 U.S.C. § 1291.

## II. ANALYSIS

### A. Standard of Review

We review the district court's denial of both Bates's claim and her objection to that denial for an abuse of discretion. *See Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009). "In a receivership proceeding, the district court has broad powers and wide discretion in crafting relief. Thus, a district court's decision relating to the choice of distribution plan for the receivership is reviewed for abuse of discretion." *Id.* (internal quotation marks and citation omitted); *see also SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 667-71 (6th Cir. 2001). Although this court has not previously heard a case arising out of an SBIC receivership under 15 U.S.C. § 687c, other circuits have applied the abuse-of-discretion standard in such cases. *See United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 442 (3rd Cir. 2005); *Callahan v. Moneta Capital Corp.*, 415 F.3d 114, 120 (1st Cir. 2005); *cf. United States v. Royal Bus. Funds Corp.*, 724 F.2d 12, 16 (2d Cir. 1983)

("[A] receivership created under 15 U.S.C. § 687c is governed by principles applicable to federal equitable receivers generally."). "A court abuses its discretion when it relies on clearly erroneous findings of fact, applies an inappropriate legal standard, or improperly applies the law, with such legal questions receiving de novo review . . . ." *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 381 (6th Cir. 2001). Under this standard, "[t]his Court will reverse only if it is left with a firm and definite conviction that a mistake has been made." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006).

## B. Bates's Claim Against Metro Meter

Despite the conspicuous shortcomings of Bates's filings and legal arguments and the district court's wide discretion in determining claims in receivership cases, a remand is necessary for the district court to clarify the legal basis upon which it denied Bates's claim and whether Bates is permitted to pursue her claim directly against Metro Meter outside of the receivership proceeding.

Based on the limited record before us, Bates's arguments that her claim against Metro Meter has priority over CAA's interest in Metro Meter appear to be meritless. Bates's claim against Metro Meter is best characterized as simply a contract claim because her judgment against Metro Meter from the Daviess Circuit Court was obtained during the litigation stay[5] and she has not shown, or

---

[5]The district court's litigation stay extended to actions involving CAA's assets. If Metro Meter is an asset of CAA, as the Receiver argues and the district court's rulings seem to indicate, the judgment was obtained in violation of the stay. To the extent that Bates had notice of the receivership when she obtained the judgment against Metro Meter, she exposed herself to a finding of contempt. *See Liberte*, 462 F.3d at 552, 556-57. Regardless of notice, the fact that the judgment was obtained while the stay was in effect makes her claim based on that judgment null and void for purposes of the receivership, *see United States v. ESIC Capital, Inc.*, 685 F. Supp. 483, 485 (D. Md. 1988), although it does not invalidate her underlying contract claim against

even asserted, that she converted her judgment into a lien. *See* Ky. Rev. Stat. Ann. § 426.120; *cf.*

*Redondo Constr. Corp. v. United States*, 157 F.3d 1060, 1063 (6th Cir. 1998) ("Under Kentucky law,

a Kentucky judgment acts as a lien against and attaches to real property situated in Kentucky as soon

as the judgment creditor complies with the statutory requirements . . . ."); *S. Bay Enters., Inc. v.*

*Mirada Bay Petroleum, Inc.*, 957 S.W.2d 287, 289 (Ky. Ct. App. 1997) (holding that, in a

receivership proceeding, a judgment creditor lost its status as a lien creditor when the sheriff returned

the writ of execution unsatisfied); 3 Ralph Ewing Clark, *A Treatise on the Law and Practice of*

*Receivers* § 685 (3d ed. 1992) ("Ordinarily, judgment debts, unless they are liens and/or are based

on priority claims have no priority over simple debts."). In contrast, CAA holds a perfected security

interest in substantially all of Metro Meter's assets. Even if we assume *arguendo* that Bates obtained

a lien on the assets of Metro Meter, her claim would still be subordinate to CAA's claim under any

of the priority schemes that might apply. *Compare* Ky. Rev. Stat. Ann. §§ 355.9-317, 355.9-322

*with* Tenn. Code Ann. §§ 47-9-317, 47-9-322 *and* Miss. Code Ann. §§ 75-9-317, 75-9-322.

However, it is unclear whether the relative priority of these claims is at all relevant because

the district court has made no finding that Metro Meter (as opposed to CAA) is insolvent or

otherwise unable to pay its creditors. In fact, both Bates's and SBA's respective counsel indicated

at oral argument that Metro Meter is operating in the ordinary course of business. If Metro Meter

is solvent, then it may be that CAA's security interest in Metro Meter's assets would not prevent

---

Metro Meter, *see United States v. Vanguard Inv. Co.*, 6 F.3d 222, 227 (4th Cir. 1993) (holding
that breach of contract claims not reduced to judgment before appointment of § 687c receiver can
still be cognizable claims).

Metro Meter from satisfying Bates's claim, assuming that the claim is valid. Because the district court simply adopted the Receiver's recommendation to deny Bates's claim without any further analysis, it is unclear whether it denied her claim because it found that CAA's interest had priority, because she failed to comply with the court's procedural requirements, or for some other reason. On remand, the district court should make specific factual findings regarding whether Metro Meter is an ongoing concern able to pay its debts, whether CAA's interest in Metro Meter has any bearing on Bates's claim against Metro Meter, and the legal basis for allowance or disallowance of Bates's claim.

Bates also failed to follow the basic procedural requirements that the district court established for submitting claims and objecting to the denial of a claim. The district court's order plainly and explicitly set forth the requirements for filing a claim with the Receiver, and Bates's filings prior to the claims bar date did not meet any of these requirements. Indeed, the internal financial documents upon which Bates relied to show that CAA no longer holds a security interest in Metro Meter were submitted to the Receiver six months after the passage of the claims bar date and only after the Receiver sent her a letter requesting any additional supportive evidence. Bates again disregarded the court's procedures in objecting to the denial of her claim. Receivership courts have broad authority in establishing claims procedures. *See Liberte*, 462 F.3d at 552. Although the court did not identify the basis upon which it denied Bates's claim, it likely would not have been an abuse of discretion to deny her claim based solely on her failure to comply with the established procedures. *See Callahan*, 415 F.3d at 120.

Despite these valid reasons for denying Bates's claim, remand also is necessary because the

district court's orders have left unsettled whether Bates will be able to pursue her claim directly

against Metro Meter outside of the receivership proceeding once the stay is lifted. When the district

court denied Bates's motion to intervene at the outset of the receivership, it stated that her motion

was denied "without prejudice to renew after [Bates] has exhausted the established claim procedure."

(R.E. 30.) In contrast, the order denying her claim indicates that any claim denied in the receivership

claims process is forever barred and that unsuccessful claimants are permanently enjoined from

further pursuing their claims against CAA or CAA's assets. It would appear to be inequitable to bar

Bates from pursuing her claim directly against Metro Meter outside of the receivership proceeding

because (1) the earlier order stated she would be able to do so, (2) she was forced to stop pursuing

her claim against Metro Meter in state court and instead directed to pursue it in this receivership

proceeding, and (3) her claim was denied by the district court without any stated reason. Forever

barring Bates's claim against Metro Meter in such a summary manner, in a proceeding where Metro

Meter is not even a party, raises due process concerns. *See Liberte Capital Group, LLC v. Capwill*,

421 F.3d 377, 382 (6th Cir. 2005) (noting that district court's discretion in fashioning relief in

receivership cases is limited by due process).

### III. CONCLUSION

For the foregoing reasons, the district court's denial of Bates's claim is **VACATED** and this

case is **REMANDED** to the district court for further proceedings not inconsistent with this opinion.

On remand, the district court should make specific findings regarding whether Metro Meter is an

ongoing concern able to pay its debts, whether CAA's interest in Metro Meter has any bearing on

Bates's claim against Metro Meter, and the basis upon which Bates's claim is either allowed or

denied. If, on remand, the district court denies Bates's claim, the district court should determine

whether, and under what circumstances, Bates will be able to pursue her claim directly against Metro

Meter outside of the receivership proceeding.